## STATE ex rel. COUNTY OF PENNINGTON v. DISTRICT COURT OF RED LAKE COUNTY and Others.[1]

January 20, 1911.

Nos. 17,007—(262).

**Inconsistent statutes incorporated in revision of statutes.**

State v. District Court of Hennepin County, 107 Minn. 437, to the effect that where two inconsistent statutes, relating to the same subject-matter, are both incorporated into a general revision, the court will, in construing them, inquire as to the date of the respective enactments, and give effect to the latest expression of the legislature, followed and applied.

**Election contest upon question submitted to popular vote.**

Sections 336 and 339, R. L. 1905, both provide for the contest of elections upon a "question submitted to popular vote," but under entirely different procedure. The two sections are in conflict, and it is *held*, under the rule above stated, that section 336 embodies the latest expression of the legislature upon the subject of such contests, and prevails over section 339, in so far as involves contests of that character.

**Same — question of creating new county.**

The question whether a new county shall or shall not be created and established, submitted to the voters under the statutes of the state, is independent and distinct from a proposition changing county lines, and not contestable under section 339, R. L. 1905, authorizing boundary line contests.

The county commissioners of Pennington county obtained from this court an alternative writ of prohibition directed to the district court for Red Lake county, and William Watts and A. Grindeland, the honorable judges thereof, and Ed. L. Healey, contestant of the election upon the proposition to establish said county, directing them to show cause why further proceedings in the matter of such contest should not be absolutely restrained. At the hearing in this court, the respondents moved to quash the writ. Motion denied, and writ absolute granted.

*E. M. Stanton* and *Edward T. Young,* for relator.

*F. A. Grady* and *Fred Farley,* for respondents.

[1]Reported in 129 N. W. 514.

BROWN, J.

A proposition for the creation and organization of Pennington county out of territory forming a part of Red Lake county was duly and regularly submitted to the electors of the county at the November, 1910, general election. Returns of the election were duly made to the secretary of state, and on November 22, 1910, duly canvassed by the state canvassing board, who certified that the proposition had received a majority of the votes cast upon the question. Whereupon, and on November 23 the Governor of the state duly issued his proclamation, as required by law (section 386, R. L. 1905), declaring and proclaiming that the new county had been duly created and organized. Thereupon the board of county commissioners, elected in connection with the creation of the county, properly qualified and entered upon the work of completing the county organization.

On December 16, 1910, a contest of the election was instituted under the provisions of section 339, R. L. 1905, in and by which it was charged that the proposition to establish the county had not in fact received a majority of the votes cast. The statute under which the contest was instituted was in all things complied with, and if thereby authorized was regular in all respects. Relator then sued out an alternative writ of prohibition from this court, directing respondents, the contestant and the judges of the district court before whom the contest was pending, to show cause why further proceedings therein should not be absolutely restrained. At the hearing in this court respondents moved to quash the writ. This motion presents the only question involved, namely, whether a contest of an election for the creation of a new county may be maintained under the provisions of section 339, R. L. 1905. It is the contention of relator that if a contest of the election in such a case may be maintained at all, none being provided for by the statute authorizing the submission of the question to popular vote (chapter 143, p. 262, Laws 1893), it must be prosecuted under section 336, R. L. 1905. The solution of the question involves a construction of the two statutes mentioned.

1. Section 336 is broad and comprehensive, and provides that

any voter may contest the election of any person declared elected to any state, county, or municipal office, or the declared result upon a constitutional amendment, "*or other question submitted to popular vote,*" by proceeding in the manner therein pointed out. It provides for an appeal to the proper court, to be taken within ten days after the result of the election has been duly declared, and that the notice thereof shall specify the points of the proposed contest. It provides for the service of notice upon the contestee when the contest relates to the election of an officer, upon the secretary of state when the matter submitted to popular vote affects the entire state or any subdivision thereof larger than a county, upon the county auditor when it affects a single county, and in all other cases upon the municipality affected. It also provides that the contestee may serve notice, within ten days after the perfection of the appeal, of an intention to offer evidence upon points not specified in the contestant's notice, and that such notices shall constitute the pleadings in the case, which shall be tried and determined in the manner provided for the trial of civil actions.

Section 339 provides that any voter may contest the election for the removal of a county seat, changing the boundaries of a county, "*or on any other question submitted to popular vote,*" by proceeding as therein directed. The contestant is required to serve upon the county board, or a member thereof, within thirty days, a notice specifying the grounds of the contest, and file the same with the clerk of the district court within ten days thereafter. It further provides that "no appeal to said court shall be required."

2. These statutes, at least as respects contests upon questions submitted to popular vote, are in irreconcilable conflict. Both provide for a contest upon those questions, but prescribe different methods of procedure. It would be impossible for either lawyer or layman to determine, in advance of a court decision, under which a particular contest might be maintained. If commenced under 336, the court might decide that it should have been prosecuted under 339; or, if under the latter section, the contest might be dismissed, because not commenced under the former. Both sections provide for a contest upon "questions submitted to popular vote." Section

336 requires the contest to be commenced within ten days after the votes have been canvassed, by service of notice of appeal upon the county auditor; and 339 requires a notice of contest to be served upon the board of county commissioners or a member thereof within thirty days, without appeal to the court. Nor can the court, without legislating, declare that particular questions may be contested under 339 and others under 336.

While it is true that certain questions—for instance, the voting of bonds for the construction of a courthouse or other purposes, whether the county or township system for caring for the poor shall be adopted—relate exclusively to county matters, and might well be held contestable under 339, yet such matters are also included within the provisions of section 336, and a decision holding either applicable to a particular contest would be founded not upon a construction of the conflicting statutes, but upon the mere ipse dixit of the court. It is clear, therefore, that one or the other of the sections must yield and give way, to the end that definiteness and certainty may take the place of the present conflict and confusion.

3. The two statutes had their origin in sections 52 and 53 and section 56 of chapter 15, Laws 1861; sections 52 and 53 being the present section 336, and section 56 the present section 339. Section 339 has come down, through the revision of 1866 and various subsequent amendments to the general election law, and was incorporated in the revision of 1905, without substantial change. Originally it provided, as at present, for contests of elections involving county seats, propositions to change county lines, or any other question submitted to popular vote. Section 336 has undergone many changes since its original enactment; the tendency being, since the revision of 1866, to enlarge and extend its provisions. In fact, all legislation changing the law of election contests since 1866 has been by way of amendment to that section. Its history is outlined in a general way in State v. District Court of Hennepin County, 107 Minn. 437, 120 N. W. 894.

Prior to the revision of 1905, the omnibus clause, authorizing contests upon "any question submitted to popular vote," was found only in section 339. That clause was by the revision also inserted

in section 336. The manifest purpose of this was to include all election contests, excluding legislative, in one comprehensive system, the procedure of which fully protects the rights of all interested parties. If this be not so, then we must ascribe to the legislature a deliberate intention to confuse the law on the subject, and of granting one right, with alternative inconsistent methods of asserting it. Obviously this was not the intention. On the contrary, the revision of the section was made with care, and discloses an evident purpose to simplify the statutes, and to produce one workable system of contests, applicable alike to all questions submitted to popular vote, and other contests there provided for.

The change so coming about is the latest expression of the legislature upon the subject, and, within the rule of the Excelsior case, must be given force and effect, to the exclusion of the provisions of section 339, authorizing similar contest, but under entirely different procedure. The failure of the commission to remove the omnibus clause from the latter section was clearly an inadvertence. In fact, the whole section might well have been omitted from the revision, for all contests there provided for may now be maintained under section 336. We do not, however, hold that the section was rendered wholly inoperative by the change. But it must be limited, to give effect to the clearly disclosed intention of the legislature, to the specific questions there provided for, namely, the removal of county seats, and changing the boundary lines of counties. All contests of other questions submitted to popular vote are governed by section 336.

4. But it is contended that the creation of a new county is in effect a change of the boundary lines of a county, and that an election therefor may be contested under that part of section 339 expressly providing for a contest of boundary line elections. In this we do not concur.

The creation of a new county is entirely separate and distinct from a proposition merely to change the boundaries of existing counties. The creation of new counties, though incidentally affecting county lines, involves the interests of the state at large, and is now exclusively committed to legislative control. The question

whether a proposed new county should or should not be created was not, prior to chapter 143, Laws 1893, ever submitted to the electors, and the original enactment of section 339 in 1861 had no reference to questions of that character. It has, perhaps, applied to such questions since the act of 1893, but only under the general clause thereof permitting the contest of questions submitted to popular vote. The constitutional amendment prohibiting special election repealed by implication section 1 of article 11, and since then the submission of questions for the creation of new counties to popular vote has been one of favor by the legislature, and not because it was required by the constitution to do so. State v. Pioneer Press Co., 66 Minn. 536, 68 N. W. 769.

On the other hand, the change of county boundaries does not concern the whole state, but rather the counties affected, and therefore by right should be within the control of those immediately concerned. In fact, the creation of new counties and the changing of county boundaries has always been treated in legislation as separate and independent, and it cannot well be held as a judicial question that they are so related and interwoven that the one necessarily includes the other. It is clear, therefore, that an election for the creation of a new county does not fall within the clause of section 339 providing for contests of elections changing county lines.

5. The further contention of contestant that section 336 in its modified form is unconstitutional and void is not sustained. No valid objection to the re-enacted section, or the revision of the statutes as a whole, is pointed out, and reflection brings none to our attention.

It follows that no contest of the election establishing Pennington county, of which the court below has jurisdiction, was instituted by contestant, and the writ of prohibition prayed for is granted. The district court of the Fourteenth judicial district is therefore restrained and prohibited from further proceeding therein.

Let a writ absolute issue.

JAGGARD, J., took no part.