## ROY W. BECK, TRUSTEE IN RE DEATH OF ARDELL L. BECK, AND ANOTHER v. GERALD D. GROE AND OTHERS. THE PROM, INC., APPELLANT.[1]

May 27, 1955.

Nos. 36,476, 36,477.

---

[1]Reported in 70 N. W. (2d) 886.

30

*Mahoney & Mahoney,* for appellant.
*Bang, Nierengarten & Hoversten,* for respondents.

NELSON, JUSTICE.

Two separate actions were begun in the district court of Mower county as follows:

(1) One by Roy W. Beck, as trustee in re death of Ardell L. Beck against Gerald D. Groe, The Prom, Inc., and others to recover for the death of Ardell L. Beck alleged to have been caused by the negligent operation of an automobile on May 3, 1953, by the defendant

Gerald D. Groe, which negligence it was alleged was caused by the unlawful sale of intoxicating liquor in violation of M. S. A. 340.95 by The Prom, Inc., to Gerald D. Groe;

(2) The other by Roy W. Beck against the same defendants for personal injuries and property damage sustained by him as a result of the same accident.

The actions were tried together before the court and a jury, and verdicts were returned as follows: $10,000 in favor of Roy W. Beck, as trustee, and $8,250 in favor of Roy W. Beck in the other suit. The Prom, Inc., made a motion in each case for judgment notwithstanding the verdict or for a new trial. These motions were denied and appeals from the orders were consolidated.

The Minnesota civil damage act, § 340.95, reads as follows:

"Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages sustained; and all damages recovered by a minor under this section shall be paid either to such minor or to his parent, guardian, or next friend, as the court directs; and all suits for damages under this section shall be by civil action in any court of this state having jurisdiction thereof."

The facts which gave rise to the two separate actions are the following: The defendant Gerald D. Groe, a minor, age nearly 21 years, left Northwood, Iowa, on the evening of May 2, 1953, accompanied by a friend, Clifford Alonzo Abbey, who was of age. They drove to Lyle and picked up two lady friends and then went on to attend the Terp Ballroom at Austin, Minnesota. They rode in a Ford coupe owned by defendant Pearl Groe, mother of Gerald D. Groe, the driver. Between the time of their arrival at 9:30 p. m. and their departure at 12:30 a. m. Gerald and his companion, Abbey, each consumed from three to five bottles of 3.2 beer. They left the Terp Ballroom at 12:30 a. m., planning to go to a restaurant south of Austin before returning home. All four rode in the one-seat coupe.

The three to five bottles of beer which Gerald and Abbey each consumed were obtained at the Terp Ballroom operated by The Prom, Inc., and consumed on the premises. There is evidence to the effect that both Gerald and Abbey made purchases of part of the beer.

The Prom, Inc., was at the time a licensed vendor of 3.2 beer, a nonintoxicating beverage under the beer act, §§ 340.01 to 340.06. The Prom, Inc., does not have a license to sell intoxicating liquor under the liquor control act nor a license to sell intoxicating malt liquor. There is no claim that Gerald had consumed any beverage other than 3.2 beer on the evening in question.

After leaving the Terp Ballroom and proceeding south from Austin on Minnesota highway No. 218, a collision occurred between the Groe automobile and an automobile owned and operated by Roy W. Beck, in which vehicle the decedent, Ardell L. Beck, wife of Roy W. Beck, was a passenger. Plaintiffs claim that Gerald so drove and managed the Groe automobile on the highway at that point one-half mile south of Austin as to cause the collision resulting in the death of Ardell L. Beck and in the personal injuries and property damage to Roy W. Beck. They further claim that either the sale of the 3.2 beer to Gerald on the premises or permitting him to consume the same on the premises of The Prom, Inc., caused him to become intoxicated and that because of this intoxication his driving became negligent, reckless, and dangerous upon the highway resulting in the aforesaid collision. Plaintiffs claim that The Prom, Inc., in dispensing the 3.2 beer to a minor, made an illegal sale of *intoxicating liquor* which caused Gerald to become intoxicated; that this intoxication was the cause of his negligent driving and the accident; and that the sale of this beer, even though sold under a license legally issued, nevertheless constituted a sale of intoxicating liquor under the civil damage act, § 340.95, since § 340.87, defining intoxicating liquor, was on the statute books prior to and at the time both L. 1933, c. 116, and the liquor control act were enacted and therefore legally controls by legislative definition what constitutes selling intoxicating liquor in this state. They contend that § 340.87 has not in fact been repealed,

amended, or modified by later or specific legislation designed to regulate and control the sale of intoxicating liquor.

Numerous assignments of error have been scheduled on this appeal. We specifically direct our attention to the following:

(1) The court erred in denying the motion of defendant The Prom, Inc., for judgment notwithstanding the verdict.

(2) The verdict is contrary to law.

(3) The verdict is contrary to the evidence.

(4) The court erred in holding that plaintiff Roy W. Beck, as trustee in re death of Ardell L. Beck, was entitled to establish liability under the civil damage act, § 340.95.

(5) The court erred in denying the motion of defendant The Prom, Inc., for a directed verdict.

We will first consider whether a trustee, acting as the personal representative by virtue of the provisions of § 573.02, the wrongful death act, may at the same time predicate his cause of action in whole or in part on the civil damage act, § 340.95, and thus by joinder proceed under both statutes in the same action. The civil damage act specifically provides that only that person to whom a right of action accrues by virtue of its provisions has the right of action, to be brought in his own name. It further provides that the action may be brought against any person who, by illegally selling, bartering, or giving intoxicating liquors, caused the intoxication of such person and that the person injured through or by such intoxication may sue for all damages sustained in person or property or means of support.[2] There was no redress at common law against persons selling, furnishing, or giving intoxicating liquor, or their sureties, for resulting injuries or damages due to acts of intoxicated persons. This court said in Hahn v. City of Ortonville, 238 Minn. 428, 433, 57 N. W. (2d) 254, 259, that:

"* * * The remedy provided by the civil damage act (§ 340.95), however, is purely a statutory creation which had no existence at

[2]See, Philips v. Aretz, 215 Minn. 325, 10 N. W. (2d) 226; Sworski v. Colman, 204 Minn. 474, 283 N. W. 778.

common law. In fact, the establishment of liability under the statute is not dependent on a finding of negligence."

See, 10 Dunnell, Dig. (3 ed.) § 4918. The cases are overwhelmingly to the effect that there is no cause of action at common law against a vendor of liquor in favor of those injured by the intoxication of the vendee. Demge v. Feierstein, 222 Wis. 199, 203, 268 N. W. 210, 212, and cases therein cited.

The common-law rule is based on the premise that the proximate cause of the injury is the act of the buyer in drinking the liquor and not the act of the vendor of intoxicating liquor in selling it. 48 C. J. S., Intoxicating Liquors, § 430. Since a civil damage law is one highly penal in its nature introducing a remedy unknown to the common law, it is to be strictly construed in the sense that it cannot be enlarged beyond its definite scope but yet may be interpreted, where the language is clear and explicit, so that its true intent and purpose is given full meaning, having in view the evil to be remedied and the object to be attained. Its provisions, where clear as to intent and purpose, will be liberally construed so as to suppress the mischief and advance the remedy. 48 C. J. S., Intoxicating Liquors, § 431. The rule at common law was that no civil action would lie for causing the death of a human being.

It will be noted, however, that here we are concerned with two legislative enactments, one providing the rights and remedies given by the wrongful death act and the other the rights and remedies given under the liquor license laws by the civil damage act. These enactments are remedial, providing separate rights and remedies not known to the common law.

By the wrongful death act the surviving spouse and next of kin are given rights within the limits of the statute to recover damages measured by the monetary loss to those who come within its provisions. Lewis v. Connolly Contracting Co. 196 Minn. 108, 114, 264 N. W. 581, 584; Schwarz v. Judd, 28 Minn. 371, 372, 10 N. W. 208, 209. The element of dependency is not involved in this statute; the element of pecuniary loss is. Masek v. Hedlund, 162 Minn. 291, 202 N. W. 732. There can be no recovery under that act except by proof

of negligence on the part of a defendant. That is the very foundation of the right of recovery. In an action under the wrongful death act, the defendant may plead and prove decedent's contributory negligence as a defense. It specifies the conditions upon which the action may be maintained. If the decedent could not have recovered for an injury, had he lived, his representative cannot recover for his death. 5 Dunnell, Dig. (3 ed.) §§ 2609, 2610, 2616.

In the case of Mayes v. Byers, 214 Minn. 54, 63, 7 N. W. (2d) 403, 407, 144 A. L. R. 821, this court held that the liability created under the liquor license laws has for its basis "a penalty measured by the injuries suffered" within the limits fixed by the bond. In legal contemplation this court said: "recovery is allowed not for a tortious wrong done to plaintiff, but as a means of enforcing the penalty imposed on the dealer." Based upon that reasoning, it was concluded that "contributory negligence as a defense is wholly inapplicable" on the ground that any recognition of plaintiff's fault as a defense would defeat the only means of enforcing the penalty under § 340.12.

The wrongful death act and the civil damage act are wholly unrelated both as to scope and purpose. In the action by the trustee as the personal representative under § 573.02 brought against defendant Gerald D. Groe and others, his negligence was the sole basis upon which that cause was founded against him and Pearl Groe, the owner of the automobile which he was driving. It is clear that in the instant cases a liquor dealer's liability to plaintiffs under the civil damage act, if it were applicable here, does not involve that issue at all. Therefore, the liability of The Prom, Inc., as a defendant, if any liability exists, is only a means of punishment for having violated the law and is not based on a wrong done to the plaintiffs. The Prom, Inc., cannot be joined as one of the defendants in either of the actions when, as here, the actions in effect charge all defendants named generally with being joint or concurrent tortfeasors in causing the death of Ardell L. Beck or injuries suffered by Roy W. Beck, since any action brought under the civil damage act against The Prom, Inc., could only be one brought to enforce a penalty under a statute which " 'contains no implication that the prohibited act

36

must be done knowingly or wilfully' or that defenses such as contributory negligence, lack of guilty knowledge, or the like are essential elements of the case." Philips v. Aretz, 215 Minn. 325, 330, 10 N. W. (2d) 226, 229. Neither is intent a necessary or relevant feature of civil damage actions under § 340.95, for it is immaterial. Any suit therefore instituted under the civil damage act is not one for a tortious wrong; it is a means provided by statute to impose a penalty on a dealer of intoxicating liquor based upon contract. Mayes v. Byers, *supra;* Philips v. Aretz, *supra.*

A recovery for death by wrongful act based upon negligence would in nowise preclude an action separate and apart under the civil damage act of our liquor license laws provided The Prom, Inc., licensed to sell 3.2 beer as a nonintoxicating beverage, comes within the intent and purpose of the civil damage act. The proper party plaintiff under § 340.95 as it is written is the person entitled to damages thereunder and not the personal representative of the decedent. This action, insofar as civil damages under the liquor license laws are concerned, cannot be brought for the injury to the wife, now deceased, brought about by any claimed unlawful sale of intoxicating liquor, but it may be brought for an act creating liability under that statute, whether in itself a tort or not, amounting to breach of contract which resulted in injury to him by depriving him of her services, consortium, and means of support. The same rule would apply if the decedent left children who thereby were deprived of their means of support and thus entitled to bring suit. The right of action is only granted to the parties named therein and in the injured party's own name. Philips v. Aretz, *supra;* Sworski v. Colman, *supra;* Demge v. Feierstein, *supra;* Murphy v. Willow Springs Brewing Co. 81 Neb. 223, 115 N. W. 761; Couchman v. Prather, 162 Ind. 250, 70 N. E. 240.

 The crux of the entire situation presented on this appeal is whether a duly licensed vendor of 3.2 beer, designated as a nonintoxicating beverage, may become liable under the civil damage act as for a sale of intoxicating liquor when having dispensed only 3.2 beer to a minor in violation of § 340.03 of the beer act. Does the civil damage act apply to sales of 3.2 beer designated, licensed,

and sold as a nonintoxicating beverage? The beer act, §§ 340.01 to 340.06, is specific and complete as to regulation and sale of 3.2 beer. It provides that the sale of 3.2 beer to a minor by a licensed vendor is unlawful both as to sale and consumption on the licensed premises unless the minor is accompanied by his parent or legal guardian and further provides that any licensee who violates that provision shall be guilty of a misdemeanor. Rights under the civil damage act, however, are not based upon the violation of a criminal provision of the liquor license laws but arise under the provisions of the civil damage act when there is illegal selling, bartering, or giving *intoxicating liquor* by a licensed vendor in violation of the liquor license laws under the license contract entered into with the state, and the right exists only because the statute says so. Without the legislative enactment, no such right exists.

In Sworski v. Colman, *supra,* this court made it clear in construing our civil damage act that at common law the vendor of intoxicating liquor is not liable for harm done to a third person by the vendee thereof. The question of whether 3.2 beer is a nonintoxicating beverage depends upon the intention of the legislature. The legislature has the power to regulate and control the sale of intoxicating liquors. It does so in the exercise of its police powers. In exercising its power to control and regulate the sale of intoxicating liquors, the state has the power to make necessary classifications, and this also applies to nonintoxicating beverages of alcoholic content. 10 Dunnell, Dig. (3 ed.) § 4905; Paron v. City of Shakopee, 226 Minn. 222, 32 N. W. (2d) 603, 2 A. L. R. (2d) 1227; George Benz Sons, Inc. v. Ericson, 227 Minn. 1, 34 N. W. (2d) 725. Because the subject of civil liabilities and criminal penalties for violating statutes regulating the sale of intoxicating liquors is controlled by the enactment of statutes pursuant to the exercise of the state's police powers relating to such matters, the courts cannot adopt rules pertaining thereto which the legislature did not when it considered the matter. 10 Dunnell, Dig. (3 ed.) § 4928a; Stabs v. City of Tower, 229 Minn. 552, 40 N. W. (2d) 362.

On March 22, 1933, by an act of congress, 48 Stat. 17, § 3 (27 USCA, § 64a), the Volstead Act was amended and beer containing not more

than 3.2 percent of alcohol by weight was declared to be a nonintoxicating beverage. U. S. Const. Amend. XVIII, prohibiting the manufacture, sale, or transportation of intoxicating liquor, had not, at that time, been repealed by the adoption of U. S. Const. Amend. XXI. USCA, Const. Amend. 18, pp. 1012, 1013.

On March 27, 1933, shortly after the amendment of the Volstead Act defining 3.2 beer as a nonintoxicating beverage, the Minnesota legislature adopted §§ 340.01 to 340.06. This is often referred to as the beer act. It is an act constituting a complete and separate law, a specific act legislating in detail on all points with respect to the manufacture, sale, and license to sell 3.2 beer. The title appearing before § 340.01 is "Beer" and its heading reads: "Non-intoxicating beverages; sale, license." Section 340.06 of the beer act provides under the heading "Non-intoxicating malt liquors excluded":

"Sections 340.01, 340.02, and 340.03 to 340.06 shall not be construed as repealing any law or ordinance relating to the sale of intoxicating liquor. Nothing therein contained shall apply to nonintoxicating malt liquor containing less than one-half of one per cent of alcohol by volume."

The liquor control act may be found in §§ 340.07 to 340.40, and § 340.07 of this act defines "intoxicating liquor" and "liquor" when used in §§ 340.07 to 340.40 as beverages containing in excess of 3.2 percent of alcohol by weight. Sections 340.401 to 340.407 regulate the manufacture, sale, and licensing of intoxicating malt liquor and § 340.401, subd. 2, defines "intoxicating malt liquors" as containing in excess of 3.2 percent of alcohol by weight. Section 340.403 provides for the licensee furnishing a bond as a prerequisite with his application to obtain a license to sell in a manner similar to the bond provisions required under the liquor control act, §§ 340.07 to 340.40. Penalties for sale of intoxicating liquors to minors are separately provided for in connection with the liquor control statutes making the offender guilty of a gross misdemeanor. See, § 340.73. All applicants for license as vendors of intoxicating liquor, including what is defined as intoxicating malt liquor, must furnish a penalty bond as required by §§ 340.12 and 340.403.

The legislature in the exercise of its police power for the purpose of controlling and regulating the liquor traffic has a wide discretion in defining intoxicating liquor and likewise in regulating and controlling the sale of any beverage of alcoholic content. Beverages containing alcohol in any degree have always been subject to legislative control and regulation. The right to be a vendor of any beverage of alcoholic content, whether declared to be intoxicating or nonintoxicating, is nothing more than a privilege which the legislature may revoke at will upon a violation of the conditions upon which it was granted or refuse to renew at will upon expiration of a license. Paron v. City of Shakopee, 226 Minn. 222, 32 N. W. (2d) 603, 2 A. L. R. (2d) 1227.

In Ruppert v. Caffey, 251 U. S. 264, 40 S. Ct. 141, 64 L. ed. 260, and National Prohibition Cases, 253 U. S. 350, 40 S. Ct. 486, 64 L. ed. 946,[3] it was held that congress had the power, within certain limits, to declare what percentage of alcohol a beer might contain without being held legally to be an intoxicating beverage under the liquor license laws. The Minnesota legislature of 1933, acting in line with congress in its amendment to the Volstead Act, authorized the sale of beer containing no more than 3.2 percent by weight, and in its definition of that beverage it designated it as nonintoxicating. It must have intended as a matter of law to declare that beer is a nonintoxicating beverage when not in excess of 3.2 alcohol by weight since the Eighteenth Amendment was in force at the time and remained in force until December 5, 1933, more than eight months later.

We cannot ascribe to the legislature the intent to violate the law by authorizing the sale of intoxicating liquor contrary to the federal laws and decisions and the national prohibition amendment. It would be absurd to say that they purposely passed an unconstitutional act or acts and placed the same upon our statute books well knowing that it could be so construed with regard to what was a nonintoxicating beverage that the licensees would become law vio-

[3]See, Louisville & N. R. Co. v. Falls City Ice & Bev. Co. Inc. 249 Ky. 807, 61 S. W. (2d) 639, 91 A. L. R. 509; Wilson v. State, 130 Neb. 752, 266 N. W. 614.

lators before the repeal of the Eighteenth Amendment and law violators in every dry county or territory in Minnesota after repeal of the Eighteenth Amendment. The congress of the United States and the legislature of the state of Minnesota having so declared, we are constrained to hold that the courts of this state are no longer, ordinarily, expected to take judicial notice that beer of not more than 3.2 of alcohol by weight is intoxicating liquor as was done in cases prior to the enactment of the beer act in 1933.

The legislature is in the first instance the judge of what is necessary for the public welfare. The earnest conflict of serious opinion does not suffice to bring it within the range of judicial cognizance. Courts cannot pass on the soundness or expediency of theories embodied in statutes enacted in the exercise of the police power for the social benefit of the citizen and the public welfare. The control, regulation, and restrictions to be imposed, to attain, so far as may be, results consistent with the public welfare, are purely of legislative cognizance. The legislative determination of the control to be applied is final, except when so arbitrary as to be violative of the constitutional rights of the citizen. 3 Dunnell, Dig. (3 ed.) § 1605, and cases cited.

The police power right to legislate upon the subject of intoxicating liquor is a right of the state to exercise full control of the traffic and to regulate the same, a power which it cannot surrender so as to preclude the legislature from exercising it when and under what circumstances it sees fit. State ex rel. Peacock v. Village Council of Osakis, 112 Minn. 365, 128 N. W. 295. The legislature has itself declared that there are certain presumptions which may be relied on in ascertaining intent and these are: (1) That the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; (2) that the legislature intends the entire statute to be effective and certain; and (3) that the legislature does not intend to violate the constitution of the United States or of this state. See, § 645.17. The beer act is in itself a complete and specific law regulating the business of licensing and selling 3.2 beer as a nonintoxicating beverage.

However, where the intent of our legislature has been so clearly expressed in the field of control and regulation to the effect that §§ 340.01 to 340.06 shall provide the exclusive framework for the regulation of the manufacture, sale, and licensing of 3.2 beer as a nonintoxicating beverage, the rule that the provisions of a complete and specific act in and of itself controls a prior and general provision is applicable. When this situation arises, the general provision must give way to the specific act and it is thus modified or amended to that extent. Specific provisions in a statute control general provisions. The principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling is well settled. If there is conflict between different statutes as to the same matter, the later statute prevails. State ex rel. Interstate, etc. v. M.-St. P. Metropolitan Airports Comm. 223 Minn. 175, 25 N. W. (2d) 718; Mlenek v. Fleming, 224 Minn. 38, 27 N. W. (2d) 800; Fox v. Swartz, 228 Minn. 233, 36 N. W. (2d) 708; Wolner v. State Dept. of Social Security, 213 Minn. 96, 5 N. W. (2d) 67; Judd v. Landin, 211 Minn. 465, 1 N. W. (2d) 861; State ex rel. Mergens v. Babcock, 175 Minn. 583, 222 N. W. 285; Rosenquist v. O'Neil & Preston, 187 Minn. 375, 245 N. W. 621; State ex rel. County of Pennington v. District Court, 113 Minn. 298, 129 N. W. 514; 6 Dunnell, Dig. & Supp. §§ 8970, 8984, and cases cited.

Section 340.39, which bears the heading "Statutes, ordinances; when not operative," provides that:

*"Except as provided in sections 340.07 to 340.40,* all statutes * * * shall be and remain in full force and effect, so far as the same in any way *relate to intoxicating liquors,* and keeping of unlicensed drinking places, or the sale or disposition of such liquors to any person or class of persons or any penalty or liability therefor." (Italics supplied.)

Section 340.401, which bears the title "Definitions," provides under subd. 2 thereof what shall constitute intoxicating malt liquor. Sections 340.402 to 340.407 contain full and complete regulations for licensing the vendor of intoxicating malt liquor as defined in

§ 340.401, including bonds required, rules as to suspension or revocation of licenses, and penalties for violations.

The legislature did not require that the licensed vendor of 3.2 beer, designated as nonintoxicating, submit or furnish a bond of compliance with the applicable regulations as a condition upon which the authorities would either grant or refuse a license. Even the grocer may obtain a license to sell it in package form and without bond under the administrative policy of the state. Penalty bonds, however, are specifically required under the liquor control act, Ex. Sess. L. 1933-1934, c. 46, now §§ 340.07 to 340.40. There is no penalty bond required from any licensed vendor under the beer act, nor are any powers delegated to make such bonds a prerequisite to licensing by ordinance.

In Gettman v. Commissioners, 122 Colo. 185, 192, 221 P. (2d) 363, 367, that court said:

"* * * we conclude that our legislature could properly declare that beer containing not more than 3.2 per cent of alcohol by weight legally was not intoxicating; * * * and that the legislature had power to delegate to county commissioners the regulation of the sale of such fermented malt beverages. Johnson v. Board of County Com'rs, 147 Kan. 211, 75 P. (2d) 849. However, while the legislature could properly declare that 3.2 per cent beer was not legally intoxicating, it could also, within limits, change that standard, as was done by the Congress in amending the Volstead Act, or it could repeal its enactment and abolish the legislative standard altogether, and this the Colorado legislature did."

The plaintiffs here contend that § 340.87, defining intoxicating liquor by statute before the Eighteenth Amendment and enactment of the national prohibition act, has not been modified and amended *pro tanto* by later legislative enactments, §§ 340.01 to 340.06, 340.07 to 340.40, and 340.401 to 340.407. If we were to adopt their contention we would have to ignore established statutory construction in this state. We would, as a court, find ourselves in the field of legislation invading the legislative right to exercise police powers. We cannot ascribe to the legislature any intent not expressed in its

enactments when it considered all related matters involving the control and regulation of alcoholic beverages of whatever content and specifically designated 3.2 beer as nonintoxicating and all spirituous, vinous, or malt beverages in excess thereof as intoxicating liquor setting up separate control and separate regulations in dealing with related subjects. We must and do take it for granted that the legislature had in mind the effect of later and specific legislation, upon existing statutes, where inconsistencies might arise between the two, and, if only inconsistent in part, that a modification or amendment *pro tanto* would be the applicable rule of construction.

As a matter of administrative policy following the 1933 enactment of c. 116, it was ruled that the sale of nonintoxicating malt liquor to an Indian does not constitute a felony under § 340.82 since the words "malt liquor," when the term is so used, has reference to malt liquors containing in excess of 3.2 percent of alcohol by volume.[4] It has also been ruled administratively that a county board may issue a license for nonintoxicating malt liquor to one who has one-eighth Indian blood.[5] It has also been administratively ruled that a town board member or a village councilman or a village clerk may receive a license to sell 3.2 beer within his township if he is not voting on his application.[6]

While administrative interpretation is not binding upon the courts, it should receive consideration unless found to be erroneous and in conflict with the expressed purpose of the statute and the intention of the legislature. Mattson v. Flynn, 216 Minn. 354, 13 N. W. (2d) 11; 6 Dunnell, Dig. & Supp. § 8952; and cases cited. In Donnelly v. Minneapolis Mfg. Co. 161 Minn. 240, 245, 201 N. W. 305, 307, this court said:

"Courts are not permitted by construction to carry a statute, particularly one in derogation of the common law, beyond its clearly defined scope. It is for the legislature to limit or extend the operation of its enactments and, even though there are no self contained

[4]Opinion Attorney General, No. 217-F-3, April 3, 1936.

[5]Opinion Attorney General, No. 217-F-3, July 2, 1936.

[6]Opinions Attorney General, No. 217-B-8, May 24, 1938, and No. 217-B-6, August 3, 1934.

limitations, it would be judicial legislation to extend a statute beyond its subject matter."

This court has also said that, when legislation, even though in derogation of the common law, is remedial in character, a liberal construction should be adopted; but it has likewise recognized that the remedial nature of such legislation does not, however, justify a construction which gives to the statutory language an application and a meaning not intended by the legislature. 6 Dunnell, Dig. & Supp. § 8958; Jung v. St. Paul Fire Dept. Relief Assn. 223 Minn. 402, 27 N. W. (2d) 151.

In Sworski v. Colman, *supra*, the court rejected the argument that the statute prohibiting the sale of intoxicating liquor to certain persons is intended to confer upon such persons as a class unable to exercise self-protection a right of action for harm resulting from the consumption of liquor. This rule was recently applied in Cavin v. Smith, 228 Minn. 322, 37 N. W. (2d) 368.

The civil damage act requires that both the right and the remedy must be within the terms of the statute. The particular statutory provisions of each state are most important and are controlling both as to the right and the remedy. Black, Intoxicating Liquors, § 281; 30 Am. Jur., Intoxicating Liquors, § 632.

An examination of the statutes of other states discloses provisions similar in part to our own but others which materially modify these provisions when construed in connection with the other portions of the statute. We must not overlook in construing our civil damage act that the right and the remedy created by this statute is exclusive. No right of action exists save that expressly given by statute, and the remedy prescribed cannot be enlarged except by further legislative enactment.[7]

Our legislature has prescribed the amount and condition of the bond to be given by each licensed seller of intoxicating liquors, but has nowhere limited by statute the damages—except as to the amount in each individual bond—which might be recovered.

---

[7]Paulson v. Langness, 16 S. D. 471, 93 N. W. 655; Kennedy v. Garrigan, 23 S. D. 265, 121 N. W. 783, 21 Ann. Cas. 392.

It is well understood that our wrongful death act was enacted for the manifest purpose of granting a right of action, that did not exist at common law, to the personal representative of decedent for the exclusive benefit of the surviving spouse or next of kin of the deceased person, provided the injured party himself could have maintained the action had he lived.

It is equally clear that in order to maintain an action under the civil damage act, also a creature of statute, it is *not necessary* that an action could be brought or maintained against the intoxicated person; that the statute is silent as to the right of a personal representative to maintain the action; that the rights and remedies of each rest upon an entirely different basis; and that the recovery for pecuniary loss contemplated by the Minnesota wrongful death act is not authorized by the civil damage act which specifies only injuries in person, or property, or means of support and is penal in scope.

We have reached the conclusion that an action by a trustee or personal representative cannot be predicated upon our civil damage act, § 340.95, for it clearly provides that the action must be brought by the injured party in his own name and is unrelated to the death by wrongful act statute in purpose and the basis upon which the right of recovery rests.

We further conclude that the sale of 3.2 beer to Gerald D. Groe or the consumption of the same on the premises of The Prom, Inc., by him, though he was a minor at the time and it constituted an illegal sale of 3.2 beer under § 340.03 and the licensing provisions of the beer act, nevertheless did not constitute an illegal sale of *intoxicating liquor* under our present liquor license law regulating the sale of intoxicating liquor nor the civil damage act, § 340.95. We likewise, while recognizing that the legislature could properly declare that 3.2 percent beer was not legally intoxicating, recognize that it could also within limits change the standard as was done by congress in amending the Volstead Act, or it could repeal its enactment or abolish the legislative standard altogether. However, no such action has been taken. Neither action here can legally be predicated on the civil liabilities provisions of § 340.95. The provisions of the civil

46

damage act are controlling only as to right and remedy where it specifically applies and that seems to be a rule of general application.

In view of the conclusions reached, it is not necessary to consider or discuss the other assignments of error urged on this appeal.

The orders appealed from are reversed with instructions to enter judgments below, notwithstanding the verdicts, in favor of defendant The Prom, Inc.

Reversed.

