BETTY TRAIL v. GILBERT CHRISTIAN,
d.b.a. HERR SCHMIDT INN.

213 N. W. 2d 618.

December 7, 1973—No. 43528.

*Robins, Meshbesher, Singer & Spence* and *Ronald I. Meshbesher,* for appellant.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Mary Jeanne Coyne,* and *O. C. Adamson II,* for respondent.

TODD, JUSTICE.

Plaintiff, seriously injured as a result of an automobile accident, appeals from a summary judgment dismissing her complaint against defendant tavern owner on the grounds that traditional principles of common law do not provide a cause of action against commercial vendors of intoxicants who, in violation of statutory prohibition, furnish or sell to one whose tortious conduct ultimately causes personal injury or property damage. We have determined that the common-law rule of nonliability of vendors of statutorily defined nonintoxicating malt beverages is unsound and should no longer control under the circumstances of this case. We reverse.

A detailed statement of the facts giving rise to the present litigation appears in a prior decision of this court involving other issues, Trail v. Village of Elk River, 286 Minn. 380, 175 N. W. 2d 916 (1970). Since this appeal is taken from a summary judgment, we consider the facts alleged in the complaint as true. Briefly summarized, those facts disclose that on August 14, 1965, defendant, owner and sole proprietor of a tavern known as the Herr Schmidt Inn, did sell, either personally or through his employees, 3.2 beer to Robert Ridlon, who at the time of the sale was allegedly intoxicated and only 20 years of age.[1] After leaving defendant's premises, Ridlon proceeded to operate his automobile at speeds in excess of 90 miles per hour. Near the intersection of Highway No. 10 and Crooked Lake Boulevard in the city of Coon Rapids, at approximately 3:35 a. m., the vehicle driven by Ridlon collided with the rear portion of the automobile in which plaintiff, then 21 years of age, was a passenger. As a result of this collision, plaintiff's spine was severed, thereby rendering her an invalid for the remainder of her life.

Plaintiff, conceding that the sale of 3.2 beer does not give

---

[1] A minor under statutory provisions then applicable.

rise to a cause of action under our Civil Damage Act,[2] commonly referred to as the Dram Shop Act, claims she is entitled to recover from defendant under elementary principles of common-law negligence. Thus, plaintiff presents directly to this court the question of whether a common-law action grounded in negligence exists outside the scope of our Civil Damage Act against a commercial vendor who sells 3.2 beer in violation of our statutes prohibiting such sales to those already intoxicated[3] and to minors.[4]

At the outset, we note that this appeal invites discussion of numerous fields of common-law liability outside the scope of our Civil Damage Act, but we decline to pass upon them at this time. Instead, we limit this opinion to sales of 3.2 beer to minors or those already intoxicated and the ensuing civil liability of the commercial vendor whose sale under these circumstances results in injuries to an innocent third party not a patron of the vendor.[5]

■ Defendant argues that no common-law action exists against those selling or furnishing intoxicating beverages to an

---

[2] Minn. St. 340.95.

[3] Minn. St. 340.73, subd. 1, provides: "It shall be unlawful for any person, except a licensed pharmacist to sell, give, barter, furnish, deliver, or dispose of * * * any * * * malt, or fermented liquors in any quantity, for any purpose * * * to any intoxicated person * * *." We note that pursuant to Minn. St. 340.87, the definitional statute, "liquor," for purposes of § 340.73, subd. 1, includes "distilled, fermented, spirituous, vinous, and malt liquor."

[4] Minn. St. 1965, § 340.03, applicable in this case, provided: "It shall be unlawful for any:

(1) Licensee or his employee to sell or serve non-intoxicating malt liquor to any minor or to permit any minor to consume non-intoxicating malt liquor on the licensed premises unless accompanied by his parent or legal guardian * * *."

This provision was repealed in 1967 but substantially reenacted as Minn. St. 340.035, subd. 1.

[5] See, Martinson v. Monticello Municipal Liquors, 297 Minn. 48, 209 N. W. 2d 902 (1973), for a consideration under Minn. St. 340.95 of those deprived of standing as innocent third parties.

individual who, as a result of thereby being intoxicated, negligently or tortiously causes personal injury to an innocent third party. This common-law rule of nonliability was premised on the theory that the proximate cause of the negligence was not the vendor's act of selling or furnishing the intoxicating beverages but their consumption by the customer-tortfeasor.[6]

Defendant, in his argument before the trial court and this court, insists that this jurisdiction has steadfastly adhered to the common-law rule of nonliability and cites Strand v. Village of Watson, 245 Minn. 414, 72 N. W. 2d 609 (1955), and Beck v. Groe, 245 Minn. 28, 70 N. W. 2d 886 (1955), in support of his contention. Each of those cases, however, involves actions brought under our Civil Damage Act with the specific issue of common-law negligence not before this court. In the Beck case, we noted that an action under our Civil Damage Act was not dependent upon a finding of negligence; it was purely a statutory action unrelated to the common law. It was only in dictum that this court added the following (245 Minn. 34, 70 N. W. 2d 891):

"* * * The cases are overwhelmingly to the effect that there is no cause of action at common law against a vendor of liquor in favor of those injured by the intoxication of the vendee."

The Beck case, however, was decided almost two decades ago, and, although this statement may well have reflected the status of such litigation in the various states at that time, the noticeable trend of recent decisions suggests that no longer is the common-law rule of nonliability being uniformly and summarily accepted as controlling.[7]

In considering the availability of such a common-law remedy to the plaintiff, it must be kept in mind under Minnesota statutes malt beverages containing not less than 1/2 of 1 percent

---

[6] See, Annotation, 75 A. L. R. 2d 833; 48 C. J. S., Intoxicating Liquors, § 430.

[7] See, Comment, *Dram Shop Liability—A Judicial Response,* 57 Calif. L. Rev. 995, 1008.

alcohol by volume or more than 3.2 percent alcohol by weight are defined as nonintoxicating malt liquor.[8] In Beck v. Groe, *supra*, a complete history of this legislation is outlined. We there held that, based on the legislative history, 3.2 beer could not be classed as an intoxicating beverage under the Dram Shop Act. That issue is not involved in this case as no claim is being made under the Dram Shop Act. We further note that it appears that by adopting the Civil Damage Act the legislature has preempted the subject of remedies available for wrongs arising from improper sales of statutorily defined intoxicating beverages.

We pointed out in Trail v. Village of Elk River, 286 Minn. 380, 388, 175 N. W. 2d 916, 921:

"The issue in Beck was whether the sale of 3.2 beer to a person was actionable, not whether sale of admittedly intoxicating liquor to a person rendered intoxicated by the consumption of 3.2 beer is actionable. The legislature, as we have noted, for purposes of *sale* of certain liquids, has drawn a line classifying those beverages which contain more than 3.2 percent of alcohol by weight as intoxicating. It is improper to apply this classification in determining whether a person can become intoxicated on certain liquids because the original distinction was not made on the basis of a legislative assumption, either informal or after consideration of empirical evidence, that people who consume liquids with less than a 3.2 percent alcoholic content cannot become intoxicated. Nor did the laws regulating the sale of alcohol necessitate such a study. The purposes of the laws prohibiting the sale of certain beverages would not be advanced by transposing their definitions to this situation, and the purpose of the Civil Damage Act would be defeated if this were done. However, when a person becomes in fact inebriated—and counsel for respondent Elk River admitted on oral argument that one can become in fact intoxicated by drinking 3.2 beer—those provisions of our laws which prohibit further sale of intoxicating liquor to him are applicable."

---

[8] Minn. St. 340.001, subd. 2.

Thus, we have judicially recognized the reality that a person can become intoxicated by consuming 3.2 beer, and for purposes of this appeal, we must assume that at trial plaintiff will be able to establish the fact that Ridlon was a minor or was intoxicated, or both, as plaintiff alleged in her complaint, and that defendant did serve him 3.2 beer. We have already recognized the fact that intoxicated persons, because of their unpredictable behavior, may injure others. Sylvester v. Northwestern Hospital, 236 Minn. 384, 389, 53 N. W. 2d 17, 20 (1952).

The early case of Swinfin v. Lowry, 37 Minn. 345, 34 N. W. 22 (1887), lends support to the proposition that Minnesota has traditionally followed the common-law rule. There, the defendants furnished intoxicating liquor to an 18-year-old who subsequently attacked an innocent third party, and the court held that the defendants were not liable for the injuries since the furnishing of the liquor was not the proximate cause of the assault. However, we have not strictly adhered to the rule, particularly in cases involving assaults by intoxicated persons against other patrons of the defendant. Windorski v. Doyle, 219 Minn. 402, 18 N. W. 2d 142 (1945); Klingbeil v. Truesdell, 256 Minn. 360, 98 N. W. 2d 134 (1959). The Windorski case involved an action against a bar owner for death by wrongful act resulting from an assault made upon decedent-patron by another patron in the bar who was served intoxicating beverages while intoxicated. It was not an action under the Dram Shop Act. Necessarily inherent in that decision is an indication that the statutory and common-law causes of actions can exist concurrently.[9]

■ The major assault upon the common-law doctrine of nonliability commenced with Waynick v. Chicago's Last Department Store, 269 F. 2d 322 (7 Cir. 1959), certiorari denied, 362 U. S. 903, 80 S. Ct. 611, 4 L. ed. 2d 554 (1960). In that case, after excessive drinking in an Illinois bar, the intoxicated patron drove

---

[9] An excellent discussion of this case and the question of common-law liability of liquor vendors in Minnesota appears in 49 Minn. L. Rev. 1154. See, also, Note, 18 Western Reserve L. Rev. 251, 266.

across the state line into Michigan, where his negligent driving resulted in serious injury to plaintiffs. The court reasoned that neither the Illinois nor Michigan Civil Damage Acts applied extra-territorially and therefore a vacuum existed in the law. Holding that a common-law action would lie and citing traditional tort principles of duty and proximate cause, the court concluded that serving the patron set into a motion a foreseeable chain of events for which the innkeeper was ultimately responsible.

The decision in Waynick is the cornerstone for the leading case on this subject, namely, Rappaport v. Nichols, 31 N. J. 188, 156 A. 2d 1, 75 A. L. R. 2d 821 (1959). In that case, Robert Nichols, a minor, was sold alcoholic beverages by four taverns in and around the city of Newark, New Jersey, one or more of the taverns serving him when he had become intoxicated. Thereafter, while operating his automobile, Nichols collided with the vehicle driven by Arthur Rappaport and owned by the plaintiff. As a result of the collision, Rappaport died. Plaintiff brought an action against each of the four taverns to recover damages in her individual capacity as owner of the car and, as administrator of Rappaport's estate, for his death. The trial court granted summary judgment in favor of defendants, holding that the complaint alleging an action grounded in negligence failed to state a valid cause of action. The Supreme Court of New Jersey unanimously reversed. Recognizing first that New Jersey had no Civil Damage Act at the time the cause of action arose, the court held (31 N. J. 201, 156 A. 2d 8, 75 A. L. R. 2d 830) :

"* * * Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor. * * *

*"When alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm not only to the minor or the intoxicated person but also to members of the traveling public may readily be recognized and fore-*

*seen; this is particularly evident in current times when travel-*
*ing by car to and from the tavern is so commonplace and acci-*
*dents resulting from drinking are so frequent."* (Italics sup-
plied.)

New Jersey had no Dram Shop Act, and the plaintiffs' claim
was premised on common-law negligence. The New Jersey court
in Rappaport relied by way of analogy on the Minnesota case
of Anderson v. Settergren, 100 Minn. 294, 111 N. W. 279 (1907),
to avoid the defense of the tavern owner under the common-law
theory based on causation and foreseeability. In the Anderson
case, the defendant unlawfully sold cartridges and loaned a .22-
caliber rifle to a minor who negligently fired the rifle and in-
jured the plaintiff. Our court, in sustaining the common-law
complaint grounded on negligence, pointed out that the statute
which prohibited the use by minors was for the benefit of the
public generally, as well as the minors themselves, and that the
firing of the gun by the minor did not constitute an efficient
intervening cause which broke the legal chain of causation.

The Anderson case has been used by numerous courts through-
out this country in a variety of situations to meet the traditional
defenses in a variety of common-law actions, and its rationale
is applicable to the instant case.

In an earlier Minnesota case, Christianson v. Chicago, St. P.,
M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640 (1896), our court
established a rule which is still followed today. There we held
(67 Minn. 97, 69 N. W. 641):

"* * * Otherwise expressed, the law is that if the act is one
which the party ought, in the exercise of ordinary care, to have
anticipated was liable to result in injury to others, then he is
liable for any injury proximately resulting from it, although he
could not have anticipated the particular injury which did hap-
pen. Consequences which follow in unbroken sequence, without
an intervening efficient cause, from the original negligent act,
are natural and proximate; and for such consequences the orig-

inal wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

Thus, in Minnesota the causation argument has little persuasive value as a ground for defeating the employment of common-law remedies in this field.

Since Waynick and Rappaport, several other jurisdictions have reevaluated the common-law rule of nonliability of commercial liquor vendors. A substantial number have determined that the sale or furnishing of intoxicating beverages may well be the proximate cause of injuries sustained as a result of an intoxicated individual's tortious conduct and that liability may thus be imposed upon the vendor or other person furnishing intoxicants in favor of the injured, innocent third party.[10]

We agree with the Supreme Court of California in Vesely v. Sager, 5 Cal. 3d 153, 163, 95 Cal. Rptr. 623, 630, 486 P. 2d 151, 158 (1971), as it held:

"To the extent that the common law rule of nonliability is based on concepts of proximate cause, we are persuaded by the reasoning of the cases that have abandoned that rule. * * * [A]n actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct. * * *

* * * * *

"* * * [I]t is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of in-

---

[10] Vesely v. Sager, 5 Cal. 3d 153, 95 Cal. Rptr. 623, 486 P. 2d 151 (1971); Berkeley v. Park, 47 Misc. 2d 381, 262 N. Y. S. 2d 290 (1965); Jardine v. Upper Darby Lodge No. 1973, Inc. 413 Pa. 626, 198 A. 2d 550 (1964); Adamian v. Three Sons, Inc. 353 Mass. 498, 233 N. E. 2d 18 (1968); Mitchell v. Ketner, 54 Tenn. App. 656, 393 S. W. 2d 755 (1964); Wiener v. Gamma Phi Chapter, ATO Frat. 258 Ore. 632, 485 P. 2d 18 (1971); Elder v. Fisher, 247 Ind. 598, 217 N. E. 2d 847 (1966); Prevatt v. McClennan, 201 So. 2d 780 (Fla. App. 1967); Pike v. George, 434 S. W. 2d 626 (Ky. 1968); Mason v. Roberts, 33 Ohio St. 2d 29, 294 N. E. 2d 884 (1973); Deeds v. United States, 306 F. Supp. 348 (D. Mont. 1969).

*juries inflicted by that individual upon a third person. If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are fore-seeable intervening causes, or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent."* (Italics supplied.)

We also note the Wisconsin decision in Garcia v. Hargrove, 46 Wis. 2d 724, 176 N. W. 2d 566 (1970), where the court by a 4-3 decision reaffirmed the common-law rule of nonliability. Inherent in the majority decision is a public policy concern for noncommercial suppliers of intoxicants which is not before us in this case and would have to be considered in the light of our decision in Ross v. Ross, 294 Minn. 115, 200 N. W. 2d 149 (1972). The dissenting opinion seems to better reflect the current trend. Mr. Chief Justice Hallows there said (46 Wis. 2d 737, 176 N. W. 2d 572) :

"The time has arrived when this court should again exercise its inherent power as the guardian of the common law and hold upon general principles of common-law negligence a person, who, when he knows or should have known a person is intoxicated, sells or gives intoxicating liquor to such a person, is guilty of a negligent act; and if such negligence is a substantial factor in causing harm to a third person, he should be liable with the drunken person under our comparative-negligence doctrine. Conceded, the common law in this state for almost 100 years has been to the contrary. [Citing cases], but the basis upon which these cases were decided is sadly eroded by the shift from commingling alcohol and horses to commingling alcohol and horsepower."

We hold within the scope of this opinion that plaintiff has properly pleaded a common-law negligence action; and to the extent that any of our prior decisions are inconsistent, they are hereby overruled.

In reaching this result, we recognize that the common law is not a thing of chiseled marble to be left unchanged for centuries

and are mindful of the following statements made by the Wisconsin Supreme Court in Bielski v. Schulze, 16 Wis. 2d 1, 11, 114 N. W. 2d 105, 110 (1961):

"* * * Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of *stare decisis*, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others 'long dead and unaware of the problems of the age in which he lives, do his thinking for him.' Mr. Justice Douglas, Stare Decisis, 49 Columbia Law Review (1949), 735, 736."

■ Defendant insists that regulation of intoxicating beverages has been preempted by the legislature and that the exclusive remedy in this case must, therefore, lie with that branch of our government. This argument, however, fails to recognize the nature of the remedy being sought.

As we pointed out in Beck v. Groe, *supra*, the legislative right of action under our Civil Damage Act is confined to injuries resulting from illegal sale or gift of intoxicating liquors as defined by statute, and those intoxicating liquors do not include the statutorily defined beverages involved in this litigation. Nevertheless, the fact that this longstanding legislation could have been modified by numerous sessions of the legislature, all of which have failed to include 3.2 beer within the scope of our Civil Damage Act, does not preclude the existence of a common-law remedy which is not based upon any legislative action. We will not promote legislative silence to legislative preemption. To do so would immunize a certain segment of the liquor industry, namely, dispensers of 3.2 beer, from liability for negligent conduct which causes serious injury to innocent third persons. Nothing at common law nor in the legislative history of the Civil Damage Act purports to create such an exception. Moreover,

liability was originally denied in cases of this type because of the longstanding court-made rule of nonliability for liquor dispensers. We have determined other common-law principles of tort law to be invalid, Spanel v. Mounds View School Dist. No. 621, 264 Minn. 279, 118 N. W. 2d 795 (1962), and see no reason to now perpetuate the injustice and hardship resulting from application of the judicially formulated rule that the consumption of an alcoholic beverage, rather than its sale, is the proximate cause of injuries flowing from intoxication.[11]

■ We thus turn to consider the nature of defendant-vendor's tort liability resulting from a violation of Minn. St. 1965, § 340.03, and Minn. St. 340.73, subd. 1, to the end of determining whether violation of those statutes constitutes negligence per se or whether defenses such as comparative negligence, contributory negligence, and assumption of risk should be available to the defendant. We recently reviewed the criteria for determining whether or not a violation of a statute should be regarded as conclusive evidence of negligence in Zerby v. Warren, 297 Minn. 134, 210 N. W. 2d 58 (1973). In that case, we permitted an action for death by wrongful act against a vendor of glue on behalf of the survivors of a minor who had sniffed glue purchased by his minor companion from the vendor. Although we noted that for purposes of characterizing tort liability failure to perform in accordance with a statutorily fixed standard of conduct did not ordinarily differ from a breach of duty or standard of care established at common law, nonetheless in Zerby we found an exception to this general rule in the provisions of Minn. St. 145.38.[12] We also held (297 Minn. 140, 210 N. W. 2d 62):

---

[11] See, also, Note, 49 Minn. L. Rev. 1154.

[12] Minn. St. 145.38 provides: "Subdivision 1. No person shall sell to a person under 19 years of age any glue or cement containing toluene, benzene, zylene, or other aromatic hydrocarbon solvents, or any similar substance which the state board of health has * * * declared to have potential for abuse and toxic effects on the central nervous system. This section does not apply if the glue or cement is contained in a pack-

"Types of statutes which would be exceptions to the general rule [and thus give rise to negligence per se in the event such statutes are violated] include * * * statutes for the protection of intoxicated persons; * * *."

For purposes of characterizing tort liability, we treat the sale or furnishing of 3.2 beer to a minor as we would the sale or furnishing of such beer to an individual already intoxicated, for, as we construe the broadly expressed restrictions embodied within § 340.73, subd. 1, and Minn. St. 1965, § 340.03, it is clear that the legislature did not intend to limit the benefit of these statutes to only those who, because of their age or physical condition, were deemed unable to exert self-protective measures of care. Rather, it wisely enacted these provisions for the purpose of protecting members of the general public as well.[13] As such, the legislature must have intended that no defense would displace the responsibility imposed by these two statutes.

A recent Ohio case, Mason v. Roberts, 33 Ohio St. 2d 29, 294 N. E. 2d 884 (1973), has held a tavern operator liable for injuries to a patron inflicted by an intoxicated patron despite the existence of a dram shop act. The Ohio statute differs from the Minnesota statute in that it applies only if intoxicants have been

---

aged kit for the construction of a model automobile, airplane, or similar item.

Subd. 2. No person shall openly display for sale any item prohibited in subdivision 1."

[13] Our interpretation of Minn. St. 1965, § 340.03, and Minn. St. 340.73, subd. 1, is in accord with the majority of jurisdictions which, in construing similar statutes, have likewise held their purpose to be protection of the general public. Davis v. Shiappacossee, 155 So. 2d 365 (Fla. 1963); Waynick v. Chicago's Last Department Store, 269 F. 2d 322 (7 Cir. 1959), certiorari denied, 362 U. S. 903, 80 S. Ct. 611, 4 L. ed. 2d 554 (1960); Rappaport v. Nichols, 31 N. J. 188, 156 A. 2d 1, 75 A. L. R. 2d 821 (1959); Elder v. Fisher, 247 Ind. 598, 217 N. E. 2d 847 (1966); Vesely v. Sager, 5 Cal. 3d 153, 95 Cal. Rptr. 623, 486 P. 2d 151 (1971). See, also, Deeds v. United States, 306 F. Supp. 348 (D. Mont. 1969). But see, Wiener v. Gamma Phi Chapter, ATO Frat. 258 Ore. 632, 485 P. 2d 18 (1971).

served to an intoxicated person whose name appears on a "blacklist" published by the Ohio Department of Liquor Control. The intoxicated assailant's name was not on any such list and the trial court granted summary judgment for the tavern operator. The Ohio Supreme Court, in sustaining the intermediate court's reversal of the judgment, quoted with approval the following language of the intermediate court (33 Ohio St. 2d 32, 294 N. E. 2d 887) :

"The manifest purpose of the enactment of the so-called blacklisting statutes was to increase public protection by imposing absolute or strict liability in those cases. *It defeats the real purpose of the enactment of the blacklisting statute to twist it into an immunity bath for all other cases.*" (Italics supplied.)

If plaintiff can prove her allegations, defendant's sale to Robert Ridlon would have been unlawful and may be determined the proximate cause of plaintiff's injury. Moreover, defendant's conduct would have amounted to a breach of duty, for in serving 3.2 beer under the circumstances presented, he created a situation which involved an unreasonable risk of harm to others through the foreseeable action of an individual who was either a minor, or already intoxicated.

It is clear that plaintiff, a member of the general public, is an individual for whose protection Minn. St. 1965, § 340.03, and Minn. St. 340.73, subd. 1, were enacted. If it is shown that the injury plaintiff sustained was the result of precisely that type of conduct these statutes were intended to prevent, namely, the negligent conduct of a minor who is sold or furnished 3.2 beer, or the negligence of an individual already intoxicated who is sold or furnished 3.2 beer, defendant-vendor's sale of 3.2 beer to Robert Ridlon would constitute negligence per se, and defenses such as comparative negligence, contributory negligence, and assumption of risk would not be available.

■ This decision is prospective and is applicable only with regard to personal injuries sustained from and after this date, except that it shall additionally apply to the instant case.

The summary judgment for defendant ordered by the trial court is reversed and the matter remanded to the trial court for proceedings consistent with this opinion.

Reversed and remanded.