GRACE MAYES v. EDWARD O. BYERS, d. b. a. BYERS CAFE, AND ANOTHER.
INLAND BONDING COMPANY, APPELLANT.[1]

January 2, 1943.

No. 33,202.

[1]Reported in 7 N. W. (2d) 403.

*Orr, Stark & Kidder,* for appellant.
*Samuel A. Warren,* for respondent.

PIRSIG, JUSTICE.

During the period covering the incidents here related, defendant Byers operated a cafe at 253 Hennepin avenue, Minneapolis. He

had obtained a license to sell intoxicating liquor as an "on sale" dealer, and for the purpose of obtaining this license had filed a statutory bond in the sum of $3,000 pursuant to Minn. St. 1941, § 340.12 (Mason St. 1940 Supp. § 3200-26), and a similar Minneapolis ordinance. Appellant was surety on the bond. The main room of the cafe contained a bar at which intoxicating liquor was sold. From a rear corner of the main room a stairway led to the women's toilet in the basement. The stairway was lighted by an electric light affixed to the ceiling over the stairway.

Plaintiff, a widow, was 55 years of age at the time of the accident here involved. About a month prior thereto she had worked at the cafe as marker for a game known as "14." For some two years she had visited the cafe regularly at least once or twice a week. She was entirely familiar with the premises and their condition. On November 12, 1938, at about 8:15 p. m., she went to the cafe for her dinner. After she had eaten she remained in one of the booths drinking coffee and smoking. Later she began drinking a series of whiskey highballs mixed with lime rickey until she had consumed a total of six. These drinks were interspersed with doses of black coffee, designed to keep her drinks from "bothering" her. If the allegations of her complaint are to be believed, the coffee did not accomplish its purpose. Later, a lady friend and two men acquaintances joined her. About 9:45 p. m., following the highballs and after she had won some chips at "14," she proceeded to the stairway for the purpose of going to the ladies' toilet. She was "very anxious" to reach her destination. While descending the stairway, she slipped, fell, and was seriously injured. The present action is brought to recover damages for these injuries from defendant Byers and appellant, the surety on his bond.

The complaint set forth the provisions of the Minneapolis ordinance, hereinafter referred to, alleged that plaintiff became intoxicated, and that after she was obviously intoxicated defendant Byers continued to sell her liquor. It alleged further that Byers negligently permitted the steps of the stairway to become so badly

worn that they were unsafe for a person to walk upon, that he negligently failed to light the stairway, and that these various acts and omissions on the part of defendant caused plaintiff's fall. At the trial this theory of the case seems to have been abandoned, and it appears in the record that a stipulation was entered into between the parties "that the basis of this action will be on the contract obligation existing between the plaintiff and defendant Byers and not upon any negligent acts of the said defendant." In its answer the bonding company interposed a qualified general denial, admitted the execution of the bond, and pleaded contributory negligence on the part of plaintiff. At the trial, the court, on motion, struck out the plea of contributory negligence, and this is one of the errors assigned.

In his charge to the jury the court in substance instructed that if the stairway was not well lighted or if the steps were in such condition that they were not reasonably safe for use by patrons of the place, and if these conditions proximately caused the injuries complained of, the jury should find for plaintiff. The jury returned a verdict of $6,000 for plaintiff against each of the defendants. Negligence was thus left entirely out of the case. Under the instructions the verdict was based strictly upon violation of the relevant statutes and ordinances as giving a cause of action to plaintiff without proof of negligence.

The Minneapolis intoxicating liquor ordinance in force at the time of the accident required the execution of a bond from a licensee or "on sale" dealer in terms substantially identical with Minn. St. 1941, § 340.12(4), (Mason St. 1940 Supp. § 3200-26[d]). Section 5(d) of the ordinance provided that the bond should be conditioned as follows:

"That the licensee will pay to the extent of the principal amount of such bonds, any damages for death or injury caused by or resulting from the violation of any provisions of law relating to the business for which such licensee has been granted a license and further conditioned that such recovery may be had also against the surety on his bond.

"The amount specified in any bond required is hereby declared to be a penalty and the amount recoverable shall be measured by the actual damages; provided, however, that the surety thereon shall not be liable for any amount in excess of the penal amount of the bond. All such bonds shall be for the benefit of the obligee and of all persons suffering damages by reason of the breach of the conditions thereof."

The same ordinance also provided in § 21, among other detailed provisions relating to toilet room facilities: "Stairways to basement toilets shall be * * * of safe and substantial construction * * * and the same shall be well lighted at all times."

Pursuant to these statutory and ordinance requirements, the bond here sued upon was executed. The obligees therein are designated as "the City of Minneapolis * * * for the use and benefit of said City of Minneapolis and all persons suffering damages by reason of the breach of the conditions of this bond." Among the conditions of the bond, it was provided that the principal, Byers, should "obey and comply with the terms and provisions of the ordinances of the city of Minneapolis relating thereto [namely, the license]," and "the said principal shall * * * pay to the extent of the principal amount of this obligation any damages for death or injury caused by or resulting from the violation of any of the provisions of said act or ordinance."

The jury by its verdict has found that the ordinance was violated in the respects indicated by the charge, namely, by maintaining inadequate lighting and a stairway of unsafe construction. The evidence sustains this finding. Plaintiff's evidence was that the light was "poor" and "dim" and that the stairway was not well lighted. She stated also that the steps were worn from a quarter to three-quarters of an inch in depth in the center. There was other testimony that they were "rounded a little bit" or hollowed out. There was evidence contrary to that of plaintiff, and probably more persuasive, but it was within the province of the jury to determine whom it would believe.

Insufficient lighting and a defective stairway established, the evidence sustains the finding of the jury that these defects proximately caused plaintiff to fall. Her evidence is that she slipped on a step, and the jury was entitled to conclude that this was caused by the defects indicated. The case is analogous to Gross v. General Inv. Co. 194 Minn. 23, 259 N. W. 557. There the only evidence of proximate cause was proof of a defect in the gate leading to an elevator shaft and the testimony of a witness that the deceased, for whose death recovery was sought, fell into the shaft from the point at which the gate was located. The court held that the jury might properly conclude that a causal relation existed without resorting to the conjectural or speculative. The court said (194 Minn. 27, 259 N. W. 559): "It is not absolutely necessary for plaintiff to prove the precise manner in which Gross came to fall into the pit. He did fall in; and if any of the alleged negligent acts or omissions of defendants have been proved which reasonably may be found the cause of the fall and the resulting death, the verdict must be sustained." The reasoning applies here.

The claim is made that the ordinance in requiring stairways of "safe and substantial construction" meant only that the original construction should be safe and substantial and that it does not include maintenance of the stairway. The term "construction" may refer either to the erection of the structure or to its present condition. Which meaning it has must be determined in the light of the intent and purpose sought to be accomplished. Here it referred to the condition of the stairway—not merely to its original erection. To hold otherwise would defeat the purpose of the provision.

The striking of defendant's plea of contributory negligence raises a more serious question. Included therein, we may assume, is the claim that plaintiff was intoxicated at the time of the accident and that this contributed to her fall and resulting injuries. Although denied in the answer, plaintiff's allegations in her complaint are to that effect. It is urged by appellant that it is liable only if plaintiff can establish liability against defendant Byers,

that the claim against Byers is in tort for violation of the ordinance, and that contributory negligence is a defense thereto.

Contributory negligence is a defense in actions based on defendant's negligence, because, as a matter of policy, it is deemed unjust and unwise to permit a plaintiff to recover for injuries to which his own negligence has contributed. That the defense, and the policy underlying it, do not extend to all actions in tort is sufficiently indicated by such actions as those based on assault and battery, trespass, and nuisance. It is a defense in many instances where the cause of action is based on the violation of a statute or ordinance made for the benefit of individuals harmed. But it does not apply in all such instances. While such violations have been characterized as negligence *per se,* courts have been careful to recognize that they are not true cases of negligence, Dohm v. R. N. Cardozo & Brother, 165 Minn. 193, 196, 206 N. W. 377, and that whether the defenses of the ordinary negligence action may be asserted depends upon considerations of policy and legislative intent applicable to the particular statute under consideration. In Dusha v. Virginia & Rainy Lake Co. 145 Minn. 171, 176 N. W. 482, 23 A. L. R. 632, defendant, in violation of statute, employed a minor about dangerous machinery which caused his death. In a suit to recover for his death, the defenses of assumption of risk and contributory negligence were held properly stricken, the court stating (145 Minn. 172, 176 N. W. 482):

"The purpose of the statute is to protect children in life and limb, by prohibiting their employment in dangerous occupations where, because of their immaturity, they are likely inappreciative of risks and prone to be careless and heedless. So the statute altogether prohibits their employment and makes it a misdemeanor. A very great weight of authority establishes the doctrine that an employer who violates such a statute cannot assert contributory negligence nor the assumption of risks as a defense."

In Suess v. Arrowhead Steel Products Co. 180 Minn. 21, 230 N. W. 125, an employer had violated a statute prescribing condi-

tions to be maintained on the premises used by his employes. Overruling a series of prior decisions, this court held the defense of assumption of risk inapplicable. The history of the legislation on the subject, showing a public policy to provide for the safety and protection of employes in industrial plants, was held to indicate a legislative intent not to make assumption of risk a defense. It was pointed out that this was in harmony with the decisions of this court that (180 Minn. 25, 230 N. W. 127) "a violation of a statute resulting in injury to one for whose benefit the statute was enacted is negligence per se; or, as stated in some cases, that the question of negligence is not involved—that if a violation of the statute is the proximate cause of injury to one for whose benefit the statute was enacted, liability follows irrespective of any question of negligence in the ordinary sense of that word." Jewell v. Blanchett Inv. Co. 199 Minn. 267, 271 N. W. 461, is not inconsistent with these cases, for there it did not appear that the statute in question evidenced an intent to protect any particular class of persons.

The general principle of law thus applied in these cases is adequately stated by Restatement, Torts, § 483:

"If the defendant's negligence consists in the violation of a statute enacted to protect a class of persons from their inability to exercise self-protective care, a member of such class is not barred by his contributory negligence from recovery from bodily harm caused by the violation of such statute."

These decisions and principles are applicable here. Establishments open to the public for the sale and consumption on the premises of intoxicating liquors have always been attended with serious and difficult social problems. The story of this woman on the evening in question will give pause for sober reflection on the part of those who are concerned with correcting the conditions it reveals. The legislation and ordinance here considered manifest a recognition that strict regulation and control are needed for the safety and welfare of patrons who frequent the premises of "on

sale" liquor dealers and that, with their minds and judgment often affected by the excessive use of intoxicants, they cannot be left to their own self-protection. Obviously, in specifically providing for the payment of damages resulting from the violation of any provisions of law relating to the business, the patrons of the business were primarily contemplated. Responsibility for the safety of such persons is placed squarely upon the proprietor of the business—the man to whom the profits of the business go. To insure that responsibility, a bond is required to be made expressly for the benefit of those injured. If these very same people should now be denied the right of recovery in cases where contributory negligence or intoxication could be shown, the very object of this legislation would be substantially defeated.

There is a further reason why contributory negligence or other fault on the part of plaintiff cannot be recognized as a defense. The statute, as well as the ordinance, provides that "the amount specified in such bond is declared to be a penalty, the amount recoverable to be measured by the actual damages." In other words, recovery is not allowed from this point of view, on the basis of a wrong done to plaintiff. It is rather a punishment to defendant for having violated the law. It is true the plaintiff is a beneficiary thereof through the recovery of the penalty, but it is allowed to her to secure the more effective observance of the statute by giving incentive to someone to enforce the penalty. To permit a private party to recover a penalty imposed for the violation of some law is not an uncommon provision. 23 Am. Jur., Forfeitures and Penalties, p. 651, § 60; 25 C. J. p. 1189. Usury laws which allow the borrower to recover back more than the amount of usurious interest paid are an example. Patterson v. Wyman, 142 Minn. 70, 170 N. W. 928. Minn. St. 1941, § 181.13 (Mason St. 1927, § 4127), which allows the recovery of additional and unearned wages to an employe whose earned wages have not been promptly paid on discharge, is another. Hansen v. Remer, 160 Minn. 453, 461, 200 N. W. 839. See Harris v. North Star Amusement Co. 193 Minn. 480, 259 N. W. 16. Sometimes a common informer is allowed to

recover irrespective of any harm or damage sustained by him. Sometimes recovery is allowed to the state itself. 51 Harv. L. Rev. 1092.

In view of the plain language of the statute and ordinance in question, it can hardly be denied that liability was intended on the basis of a penalty measured by the injuries suffered and limited in this respect to the amount of the bond. In legal contemplation, recovery is allowed not for a tortious wrong done to plaintiff, but as a means of enforcing the penalty imposed on the dealer. This being true, contributory negligence as a defense is wholly inapplicable. To recognize plaintiff's fault as a defense would defeat the only means provided by statute for the enforcement of the penalty. Sustaining this position is Pittsburgh, F. W. & C. Ry. Co. v. Methven, 21 Ohio St. 586. See also 23 Am. Jur., Forfeitures and Penalties, p. 651, § 77.

Reference is made to cases denying recovery under statutes such as Minn. St. 1941, § 340.95 (Mason St. 1927, § 3239), to a plaintiff who himself contributed to the intoxication of the person causing him injury. See Morton v. Roth, 189 Mich. 198, 155 N. W. 459; Kearney v. Fitzgerald, 43 Iowa 580. They are inapplicable. Section 340.95 does not manifest a legislative intent to protect the beneficiaries of the statute from their own failures or to impose a penal liability. See Sworski v. Colman, 204 Minn. 474, 283 N. W. 778.

The principles stated herein are not the less applicable because city ordinances as well as statutes are involved. A city ordinance within its proper scope has the force and effect of law. Bott v. Pratt, 33 Minn. 323, 23 N. W. 237, 53 Am. R. 47.

It follows from what has been said that, pursuant to the instructions given them by the lower court, the jury properly determined that defendant Byers was liable to the extent of plaintiff's injuries irrespective of plaintiff's negligence or intoxication, and that liability of appellant on the bond followed. The excess of the verdict over the amount of the bond has been met by the reduction thereof stipulated to by the parties.

Judgment affirmed.