Lillian **FITZER**, as Trustee for the Next of Kin of William Fitzer, Decedent, Respondent,

v.

Norman **BLOOM**, et al., defendants and third party plaintiffs, Appellants,

v.

Linda Rae **DZURIS**, Third Party Defendant,

Bradley Taylor, third party defendant, Respondent,

Harold Lynch, Individually and d.b.a. Boulevard Liquor Store, third party defendant, Respondent.

No. 46482.

Supreme Court of Minnesota.

April 29, 1977.

Cousineau, McGuire, Shaughnessy & Anderson, Henry A. Cousineau, Jr., Minneapolis, for appellants.

DeParcq, Anderson, Perl & Hunegs and Richard G. Hunegs, Minneapolis, for Fitzer.

Richards, Montgomery, Cobb & Bassford and Jerome C. Briggs and Robert Merrill Rosenberg, Minneapolis, for Taylor.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, J. Richard Bland and O. C. Adamson II, Minneapolis, for Lynch.

YETKA, Justice.

This wrongful death action was brought by plaintiff-trustee for the next of kin of William Fitzer, who was killed in an automobile accident caused by a minor driver who had been drinking intoxicating liquor. Fitzer was a passenger in his own automobile driven by Linda Rae Dzuris, when it collided with an automobile driven by Linda Bloom and owned by her father, Norman Bloom. Bradley Taylor, a minor, purchased the liquor consumed by Linda Bloom at a liquor store owned by Harold Lynch. Plaintiff's original Wrongful death action was supplemented by a civil damage action against the persons allegedly supplying that liquor. The civil damage action was dismissed prior to trial. Taylor and Lynch became third-party defendants because of the cross-claims originally filed against them by the Bloom defendants in the wrongful death case. From a jury verdict of $150,000 for pecuniary loss and an order of the district court limiting the contribution from Taylor and Lynch to special damages, the Blooms appeal. We affirm.

This appeal presents two principal issues:

(1) Whether this court should hold the measure of damages under the Civil Damage Act and the wrongful Death Act to be coextensive and thus overrule the cases of *Bundy v. City of Fridley*, 265 Minn. 549, 122 N.W.2d 585 (1963), and *Herbes v. Village of Holdingford*, 267 Minn. 75, 125 N.W.2d 426 (1963).

(2) Whether the Civil Damage Act preempts a common-law action for negligence arising out of the illegal sale of intoxicating liquor to persons whose subsequent tortious acts cause injury to an innocent third party not a patron of the vendor.

Numerous errors in the conduct of the trial are also argued.

On July 26, 1973, Bradley Taylor, a minor, purchased a case of strong beer from the Boulevard Liquor Store. Later that same night Taylor and his girlfriend went with a second couple, Linda Bloom and her boyfriend Matt Ganglehoff, to a drive-in movie. While at the movie the group consumed about 10 beers. Linda Bloom testified she drank three beers. There was also testimony that Linda Bloom had indicated she had been drinking earlier.

The group left the movie at about 11:30 p. m. Bradley Taylor dropped off Linda Bloom and Ganglehoff at Ganglehoff's home. Three hours later Linda Bloom left

Ganglehoff's house after an argument and drove away in her father's car. Less than a mile from the Ganglehoff home she was involved in a head-on collision with a car driven by Linda Dzuris in which William Fitzer was a passenger. William Fitzer died as a result of the injuries sustained in the accident.

Plaintiff brought an action for wrongful death against Linda Bloom and her father. The Blooms impleaded Linda Dzuris as third-party defendant. Plaintiff then amended the complaint to assert civil damage liability against the owner of the liquor store, Harold Lynch, and against Bradley Taylor and Matt Ganglehoff. The Blooms thereafter cross-claimed against Taylor and Lynch. Plaintiff then dismissed the claims against Taylor, Ganglehoff, and Lynch. The cross-claims against Ganglehoff were also dismissed. This left Dzuris, Taylor, and Lynch as third-party defendants.

The ensuing jury trial was held in district court. Prior to the submission of the case to the jury the trial court made three rulings: (1) Linda Bloom was causally negligent as a matter of law; (2) the Blooms' claim for contribution from Taylor and Lynch was limited to one-third of the special damages; and (3) based on stipulations the special damages sustained by reason of the death of William Fitzer were $5,093.17. Submitted to the jury were the questions of Linda Dzuris' negligence, allocation of negligence between Linda Dzuris and Linda Bloom, whether the furnishing of alcoholic beverages to Linda Bloom contributed to the accident, and, finally, the amount of pecuniary loss. The jury found Linda Dzuris was not negligent, the alcoholic beverages contributed to the accident, and the amount of pecuniary loss was $150,000.

Following the denial of the Blooms' motion for a new trial, and Taylor's and Lynch's motion for judgment notwithstanding the verdict, judgment was entered on December 11, 1975. The Blooms appeal from the denial of their motion and the judgment.[1] Notices of review were also filed by Taylor and Lynch.

1. *Whether measure of damages under the Wrongful Death Act and that under the Civil Damage Act are coextensive.*

The trial court ruled Linda Bloom was causally negligent as a matter of law. The jury in their special interrogatory found a causal connection between the violation of the Civil Damage Act and the accident that caused William Fitzer's death. Prior to the submission of the case to the jury, however, the trial court ruled the amount of contribution from Taylor and Lynch was limited only to special damages. Appellants contend this constituted error and specifically request this court to overrule its previous decisions which support the rulings of the trial court.

The controversy lies in the scope of the respective damage provisions of the Civil Damage Act and the Wrongful Death Act.

The operative damage terms in the Civil Damage Act, Minn.St. 340.95, are "person," "property," or "means of support." Minn.St. 340.95 provides:

"Every husband, wife, child, parent, guardian, employer, or other person who is injured in *person* or *property,* or *means of support,* by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained; and all damages recovered by a minor under this section shall be paid either to such minor or to his parent, guardian, or next friend, as the court directs; and all suits for damages under this section shall be by civil action in any court of this state having jurisdiction thereof." (Italics supplied.)

In contrast, the operative damage term in the Wrongful Death Act, Minn.St. 573.02, is "pecuniary loss." Minn.St. 573.02, subd. 1, provides:

---

1. On April 27, 1976, this court entered an order dismissing solely as to Linda Dzuris the appeal and reviews based on a stipulation of the parties.

"When death is caused by the wrongful act or omission of any person or corporation, the trustee * * * may maintain an action therefor if the decedent might have maintained an action, had he lived, for an injury caused by such wrongful act or omission. The action may be commenced within three years after the act or omission. The recovery in such action is such an amount as the jury deems fair and just in reference to the *pecuniary loss* resulting from such death, and shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the *pecuniary loss* severally suffered by the death. The court then determines the proportionate pecuniary loss of the persons entitled to the recovery and orders distribution accordingly. Funeral expenses and any demand for the support of the decedent allowed by the court having jurisdiction of the action, are first deducted and paid.

"If an action for such injury was commenced by the decedent and not finally determined during his life, it may be continued by the trustee for recovery of such damages for the exclusive benefit of the surviving spouse and next of kin, proportionate to the *pecuniary loss* severally suffered by the death. The court on motion shall make an order allowing such continuance and directing pleadings to be made and issues framed as in actions began under this section." (Italics supplied.)

Appellants argue injury to "property" and "means of support" in the Civil Damage Act are coextensive with "pecuniary loss" in the Wrongful Death Act, and accordingly, the amount of contribution from Taylor and Lynch should also include the $150,000 for "pecuniary loss." In support of their argument appellants advance two theories for consideration. The first is that the existing damage terms of both the Wrongful Death Act and the Civil Damage Act be interpreted as coextensive. The second is that even if the damage terms are not coextensive, Taylor and Lynch are responsible for a full measure of contribution on the basis of negligence.

As to the first theory, appellants recognize previous decisions of this court hold against their proposition. They request, however, the following decisions be overruled: *Milbank Mut. Ins. Co. v. Village of Rose Creek,* 302 Minn. 282, 225 N.W.2d 6 (1974); *Bundy v. City of Fridley,* 265 Minn. 549, 122 N.W.2d 585 (1963); *Herbes v. Village of Holdingford,* 267 Minn. 75, 125 N.W.2d 426 (1963).

In *Bundy v. City of Fridley, supra,* a 10-year-old child was struck and killed by an intoxicated driver. The child's parents settled the wrongful death claim and took the civil damage claim to trial. At the close of the plaintiff's case, the trial court granted the civil damage defendants' motion for dismissal on the ground that no proof had been offered as to any loss in means of support. On appeal, the parents contended they could recover for the loss of services and companionship even though the child did not contribute financially to their support, citing *Fussner v. Andert,* 261 Minn. 347, 113 N.W.2d 355 (1961), a case in which this court extended the measure of damages under the Wrongful Death Act to cover not only economic loss but also the noneconomic incidence of service involved in the society and companionship of a deceased child. This court in *Bundy* thus stated the issue before it as the following:

"In other words, we are asked to equate the term 'means of support' as found in the Civil Damage Act with the term 'pecuniary loss' as found in the death-by-wrongful-act statute. It is contended that the measure of damages comprehended by these terms is coextensive." 265 Minn. 551, 122 N.W.2d 587.

This court resolved the issue against the parents and held the respective measures of damages under the two acts were not coextensive, stating:

"The distinctions between damages recoverable under the Civil Damage Act and the death-by-wrongful-act statute are discussed in *Beck v. Groe,* 245 Minn. 28, 34, 70 N.W.2d 886, 892, 52 A.L.R.2d 875, 883, where we pointed out:

" 'By the wrongful death act the surviving spouse and next of kin are given rights within the limits of the statute to recover damages measured by the monetary loss to those who come within its provisions. * * * The element of dependency is not involved in this statute; the element of pecuniary loss is. * * *

\* \* \* \* \* \*

" 'The wrongful death act and the civil damage act are wholly unrelated both as to scope and purpose.'

"Although we have adopted a generally broad and liberal attitude toward the Civil Damage Act, we are nevertheless, in construing the term 'means of support,' limited to its natural and ordinary meaning consistent with common usage of the term. 17 Dunnell, Dig. (3 ed.) § 8968. That the legislature did not intend to equate pecuniary injuries with injury to means of support is obvious from the fact that it expressly enumerated the distinct types of injuries for which recovery could be had, without employing the general phrase utilized in the death-by-wrongful-act statute. Had it seen fit to permit recovery for pecuniary loss, appropriate language was available for that purpose. The death-by-wrongful-act statute affords the surviving spouse and next of kin a remedy for single pecuniary loss. The Civil Damage Act provides a classification of actionable injuries for which damages may be had.

\* \* \* \* \* \*

"From an examination of the authorities, the general rule seems to be that to recover in an action for injury in 'means of support' the plaintiff must show that in consequence of the wrongful acts complained of the plaintiff's standard of living or accustomed means of maintenance has been lost or curtailed so that he has been reduced to a state of dependence by being deprived of the support which he had theretofore enjoyed. But as pointed out in *Iszler v. Jorda* [N.D., 80 N.W.2d 665] *supra,* the mere fact of diminution of income does not of itself constitute an injury to means of support. 30 Am.Jur.,

Intoxicating Liquors, § 534; *Volans v. Owen,* 74 N.Y. 526, 30 Am.Rep. 337." 265 Minn. 551, 122 N.W.2d 588.

In *Herbes v. Village of Holdingford,* 267 Minn. 75, 125 N.W.2d 426 (1963), the parents brought an action under the Civil Damage Act to recover damages for loss of "property" and "means of support" when their minor son was killed in an automobile accident involving an intoxicated driver. In charging the jury, the trial court stated they could consider the son's age, health, habits, talents, prospects, industry, contributions to his parents in money, property, or services, and all other matters proving of monetary value to the parents in the continuance of the son's life in assessing damages. On appeal, the defendant contended the instruction, although proper in a wrongful death action, was an erroneous statement of the law with respect to damages recoverable under the Civil Damage Act. On the basis of *Bundy,* this court reversed and ordered a new trial on the issue of damages. With respect to the term "means of support," we stated:

"The instructions relating to damages in the instant case apply to a suit seeking recovery of pecuniary loss under the death-by-wrongful-act statute rather than to one seeking recovery strictly for injury to 'person or property, or means of support' under the Civil Damage Act.

" * * * In the *Bundy* case we made it clear that although we have adopted a generally broad and liberal attitude toward the Civil Damage Act, we are nevertheless, in construing the term 'means of support,' limited to its natural and ordinary meaning consistent with common usage of the term. See, 17 Dunnell, Dig. (3 ed.) § 8968. * * *

\* \* \* \* \* \*

"It is thus well·established that the words 'means of support' envision a reduction of a plaintiff's standard of living." 267 Minn. 83, 125 N.W.2d 431. As to the claim for loss of "property," we stated:

"With respect to whether plaintiffs sustained an injury to property by the death of Lloyd, it has been held that destruction of the right of parents to the earnings and services of a minor son and the payment by the father of the minor son's funeral expenses constitute an injury to 'property' within the meaning of the Civil Damage Act. *Iszler v. Jorda,* [80 N.W.2d 665 (N.D.1957)]. The record shows that the plaintiffs spent $1,418 in burial expenses for Lloyd. The record also clearly establishes, we think, that the plaintiffs were deprived of services and earnings of their minor son due to the illegal sale of intoxicating liquor. Under the circumstances they are entitled to recover the burial expenses and damages for the loss of Lloyd's services and earnings up to the time he would have attained his majority as an injury to property. The court so held in *Iszler v. Jorda, supra,* and we see no reason why that rule should not be applied in this case. This court has already recognized the principle directing such a holding. The corollary of the child's duty to render services to the parent is the right of the parent to own, possess, enjoy, and dispose of such services. The right to own, possess, enjoy, and dispose of a thing is the essence of a property right. 15 Dunnell, Dig. (3 ed.) § 7849. So, where a parent is deprived of the services of a minor child, there has been a consequent injury to property which is compensatory under the Civil Damage Act." 267 Minn. 85, 125 N.W.2d 433.

Finally, in *Milbank Mut. Ins. Co. v. Village of Rose Creek,* 302 Minn. 282, 225 N.W.2d 6 (1974), a patron became intoxicated in the municipal liquor store of the defendant village. He then was involved in an automobile accident and a passenger in his car was killed. The patron's insurance company paid $17,000 in settlement of the wrongful death action and then sought contribution for one-half of that amount from the village. The trial court limited the scope of contribution to one-half the "property"[2] damage (ambulance and funeral bills). On appeal, the insurance company argued it was entitled to a full measure of contribution as an "other person" who was injured in "property" under the Civil Damage Act because it had paid out money in the settlement of the wrongful death claim and because the parties had stipulated the patron and the village concurrently caused the death of the passenger. This court held the insurance company was not an "other person" within the meaning of the Civil Damage Act and thus limited the amount of contribution to property damage.

In support of their proposition that these decisions should be overruled, appellants offer two arguments. The first is that use of separate instructions for "pecuniary loss" for wrongful death and for loss of "property" and "loss of support" for civil damage unnecessarily confuses the jury and that such confusion could be avoided if a uniform instruction were given for damages in both causes of action.

 Even assuming the validity of this argument, the cure, however, is separate trials rather than a single instruction in a consolidated trial. Even if a single instruction on damages were given, substantial differences between the wrongful death and civil damage actions would remain. In addition to the measure of damages, the actions would also differ with respect to the use of contributory negligence as a defense[3] and the use of presumptions.[4] The question of consolidation in any given case, of course, rests in the sound discretion

2. Neither loss of "means of support" nor "personal injuries" were involved.

3. Compare, e. g., *Heveron v. Village of Belgrade,* 288 Minn. 395, 181 N.W.2d 692 (1970) (negligence of a person injured by the intoxication of a minor, where such person has actively participated in furnishing liquor to the minor without knowing or inquiring as to his age is a bar to his recovery under the Civil Damage Act) with, e. g., *Ross v. Ross,* 294 Minn. 115, 116, note 2, 200 N.W.2d 149, 150 (1972) (negligence of decedent is defense in ordinary wrongful death action).

4. See, Minn.St. 602.04 (presumption of due care on part of decedent).

of the trial court. In each case the trial court must balance convenience against the possibility of prejudice, however, it could order a severance of the actions for trial if undue confusion might result. See, e. g., *Shacter v. Richter,* 271 Minn. 87, 92, 135 N.W.2d 66, 70 (1965). Moreover, the jury in the present case was only instructed on pecuniary loss under the Wrongful Death Act. Dual instructions were not used. Thus, it is difficult to see any prejudice to appellants on grounds of inconsistent instructions.

The second argument which appellants advance to justify reading the damage sections of the Wrongful Death Act and the Civil Damage Act as coextensive is that "property" under the Civil Damage Act should be given a broader meaning because of the increased social cost of accidents involving automobiles and intoxicated drivers. This, of course, is the same argument which was raised and disposed of in *Bundy* and *Herbes.* The term "property," appellants argue, should include any loss of counsel, guidance, advice, assistance, and protection that can be measured by money (which is property), and should also be included in the scope of the damage provision.

■ The main reasons against such a reading of the term "property," in the Civil Damage Act were stated in *Bundy v. City of Fridley,* 265 Minn. 549, 552, 122 N.W.2d 585, 588 (1963):

"* * * That the legislature did not intend to equate pecuniary injuries with injury to means of support is obvious from the fact that it expressly enumerated the distinct types of injuries for which recovery could be had, without employing the general phrase utilized in the death-by-wrongful-act statute. Had it seen fit to permit recovery for pecuniary loss, appropriate language was available for that purpose. The death-by-wrongful-act statute affords the surviving spouse and next of kin a remedy for single pecuniary

loss. The Civil Damage Act provides a classification of actionable injuries for which damages may be had."

In addition, it has been noted on numerous occasions that the Civil Damage Act is purely a creation of statute and without counterpart in the common law.[5] Thus, while the Civil Damage Act must be liberally construed,[6] it cannot be enlarged by construction beyond the meaning given in clear and explicit terms.[7]

The most definitive statement by this court on the nature of the "property" covered by the Civil Damage Act is in *Herbes v. Village of Holdingford,* 267 Minn. 75, 125 N.W.2d 426 (1963). We stated (267 Minn. 85, 125 N.W.2d 433):

"* * * The right to own, possess, enjoy, and dispose of a thing is the essence of a property right."

Using this definition, this court in *Herbes* held that funeral expenses, and loss of a minor child's services and earnings up to the time of majority constituted injury to "property." Later, in *Glaesemann v. Village of New Brighton,* 268 Minn. 432, 130 N.W.2d 43 (1964), the court reaffirmed that view.

■ Little reason exists to change the current law in this state. The range of interpretation is small, the law in this state is well settled, and no persuasive authority exists to the contrary. A change, if desired, is more appropriately directed to the legislature.

2. *Whether the Civil Damage Act preempts a common-law action for negligence.*

The second theory advanced by appellants to provide a basis for contribution is the recognition of a common-law liability on the part of sellers of intoxicating liquor in addition to liability under the Civil Damage Act.

**5.** See, e. g., *Beck v. Groe,* 245 Minn. 28, 70 N.W.2d 886 (1955).

**6.** See, *Ross v. Ross,* 294 Minn. 115, 200 N.W.2d 149 (1972).

**7.** *Hartwig v. Loyal Order of Moose,* 253 Minn. 347, 91 N.W.2d 794 (1958); *Beck v. Groe,* 245 Minn. 28, 70 N.W.2d 886 (1955).

Appellants' theory is founded on an extension of the principles of *Trail v. Christian,* 298 Minn. 101, 213 N.W.2d 618 (1973). In *Trail* this court held a common-law negligence action would lie against a commercial vendor who illegally furnished 3.2 beer (statutorily defined as a nonintoxicating malt beverage) to persons whose subsequent tortious acts caused injury to an innocent third party not a patron of the vendor. The scope of the decision was expressly limited to illegal sales of 3.2 beer by a commercial vendor.

Based on the rationale of *Trail,* appellants argue that a common-law cause of action for negligence should be extended to include the illegal sale of intoxicating liquor.

The principal issue raised by this argument is whether the common-law principles of *Trail* are to be extended into areas already covered by the Civil Damage Act or whether, by enacting the Civil Damage Act, the legislature has preempted the field.

■ The *Trail* case clearly applied only to the illegal sale of 3.2 beer, which is not within the scope of the Civil Damage Act. Since the legislature has provided a remedy for the illegal sale of intoxicating liquor in the Civil Damage Act, the legislature has preempted the field and has provided the exclusive remedy in the act. A common-law cause of action for negligence will only be allowed where the act does not apply.

The remaining issues raised by appellants warrant brief discussion.

*Exclusion of income tax records.*

■ At trial defense counsel attempted to introduce into evidence the income tax records of the decedent in order to impeach testimony of plaintiff. The trial court refused to admit this evidence on the ground that Lynch, who intended to introduce the returns, had not served a copy of the statement of the case, in which the intention to introduce the records was noted, on plaintiff. While we believe the trial court's ruling was unnecessarily restrictive, we do not deem his action constituted reversible error.

*Objection to plaintiff's cross-examination of Linda Bloom with respect to her past drinking experiences.*

■ Clearly, it was proper for plaintiff's counsel to cross-examine Linda Bloom about her past drinking experiences when she herself claimed not to remember the details of the accident. Counsel certainly should be permitted to inquire as to what reaction she has had from alcohol previously.

*Denial of request for partial transcript of plaintiff's closing argument.*

■ Appellants object to not being allowed to have the court reporter make a partial transcript of plaintiff's closing argument. Since no request for transcription was made prior to the commencement of argument, the trial court acted responsibly in denying the request in mid-argument.

*Plaintiff's counsel reading from pleadings in closing argument.*

■ The reading by plaintiff's counsel of denials of liability from the Blooms' answer was prompted by Blooms' counsel alleging that his clients had never denied responsibility for the accident. Surely plaintiff should be allowed rebuttal for a statement which could be proved incorrect by referring to appellant's own answer.

*Referral by plaintiff's counsel in closing argument to Linda Bloom's drinking.*

■ Appellants object to plaintiff's counsel referring to Linda Bloom's drinking in his closing argument on the grounds that the court had already indicated to the attorneys that he was going to direct a verdict of negligence on the part of Linda Bloom. We agree with the trial court that this was permissible argument.

*The failure to give an instruction on loss of support under the Civil Damage Act.*

■ The trial court, by limiting contribution to special damages, ruled there was no evidence to support a finding of loss

of support. The burden was on appellants, if they desired contribution, to show loss of support. They failed to do this. Under *Herbes v. Village of Holdingford, supra,* this requires a showing of an actual diminution in the plaintiff's standard of living. No such evidence was introduced.

*Objection to court's additional instructions to jury.*

Appellants claim error was made by the trial court in the giving of instructions to the jury when it came back from deliberations to the effect that the court would apportion the damages among the next of kin of decedent, including his sisters. Appellants argue there was no showing in the testimony that the sisters of the decedent were his next of kin. Since counsel could have insisted on being present whenever the jury came in for additional instructions and did not do so, he should not complain now. In any event, any error was harmless.

*Excessiveness of damages.*

Whether damages are adequate is addressed in the first instance to the discretion of the trial court. *Tuominen v. Waldholm,* 301 Minn. 492, 221 N.W.2d 709 (1974). Except in the most unusual circumstance, its decision will not be reversed. This is not such a case.

We feel compelled to state that many of the issues raised by appellants were self-created by reason of the dual role played by Linda Bloom in this case. One of the basic defenses to the wrongful death action is Linda Bloom's nonintoxication, yet in the third-party civil damage case, Linda Bloom must prove her intoxication. Undoubtedly this could have contributed to the larger verdict and led to the necessity for plaintiff's use of pleadings and other documents to point out the contradictions. This is a situation which appellants' counsel adopted as his strategy and having lost is now in a poor position to complain about the result.

The trial court is affirmed.