**Irwin ROBINSON, et al., Respondents,**

**v.**

**Marceal LAMOTT, d.b.a. Corner Bar, et al., Defendants and Third Party Plaintiffs, Appellants,**

**v.**

**Randall R. QUAST, et al., Third Party Defendants, Respondents.**

**No. 49144.**

Supreme Court of Minnesota.

July 13, 1979.

Geraghty, O'Loughlin & Kenney and Robert M. Mahoney, St. Paul, for appellants.

Carlsen, Greiner & Law, Jack D. Elmquist and H. Louise Olson, Minneapolis, Barnett, Ratelle, Hennessy, Vander Vort, Stasel & Herzog and W. Scott Herzog, Minneapolis, for respondents.

Heard before OTIS, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from an order of the district court in McLeod County, denying defendants' motion for summary judgment against plaintiff Everett Robinson. The district court also certified the question presented by defendants' motion as important and doubtful. We reverse.

Plaintiffs Irwin and Alma Robinson and their son, Everett Robinson, commenced this action in McLeod County District Court against Marceal LaMott, d.b.a. Corner Bar (hereafter "Corner Bar"), and his bonding company, Western Casualty and Surety Company. They alleged in their amended complaint that during the evening of February 26, 1977, and the early morning hours of February 27, 1977, while plaintiff Everett Robinson was in a state of intoxication, Corner Bar sold him intoxicating liquor in violation of Minn.St. 340.14, subd. 1a. Plaintiffs claim that as a direct result of this illegal sale of liquor Everett Robinson was struck by an automobile while walking along a street after leaving the bar, causing plaintiffs to sustain substantial damages which are compensable under Minn.St. 340.-95. In their original complaint, but not in their amended complaint, plaintiffs also assert a common-law claim for negligence.

On May 12, 1978, defendants moved for summary judgment against Everett Robinson (hereinafter "plaintiff") on the ground that a party injured as a result of his own intoxication could not maintain an action under § 340.95. Plaintiff responded by claiming through affidavits and medical records that he was a chronic alcoholic and therefore was a member of the class of persons protected by the statute.

The first question to be considered is that certified by the district court, which reads as follows:

"Whether the civil damage act, Minnesota Statutes, Section 340.95, creates a cause of action in favor of one injured by reason of his own intoxication, if it can be established that, at the time of the alleged illegal sale, he was an alcoholic."

Additionally, on appeal, plaintiff presents a second and third issue, contending that (2) if Section 340.95 does not entitle an alcoholic to relief, then an action can be maintained under common law negligence, and (3) in any event, an action may be brought on the liquor vendor's surety bond pursuant to Minn.St. 340.12.[1]

1. Minn.St. 340.95, the Minnesota Civil Damage Act, provides, in relevant part, as follows:

"Every husband, wife, child, parent, guardian, employer, *or other person* who is injured in person or property, or means of support, by an intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling or bartering intoxicating liquors, caused the intoxication of such person, for all damages, sustained; * * *." (Emphasis added.)

This court, in *Sworski v. Colman,* 204 Minn. 474, 283 N.W. 778 (1939), held that a person injured by reason of his own intoxication was not entitled to recovery under the Civil Damage Act. In so doing, the court reasoned:

"Is the quoted statute [the predecessor to § 340.95] one giving to the individual who partakes of intoxicating liquors unlawfully furnished by another in such a position that he may maintain an action for the harm *resulting to him* from such intoxication, absent, as here, any allegation of assault, force, deceit, or other like means used by the alleged wrongdoer to bring about his intoxication? The quoted statute negatives any such notion. The cause giving rise to recovery of damages has for its foundation injury 'in person or property, or means of support, *by any intoxicated person or by the intoxication of any person,* * * *.' (Italics supplied.) Under this statute, if there was any wrong done by Colman [defendant bar] the cause accrued to the parents of Clifford [the intoxicated party], in which

event the action should have been brought by them, not by Clifford's administrator. There are several cases sustaining that view and our attention has not been directed to any holding otherwise." 204 Minn. 477, 283 N.W. 780. (Emphasis in original.)

This view has been reiterated by numerous cases decided subsequent to the *Sworski* decision. See, e. g., *Martinson v. Monticello Municipal Liquors,* 297 Minn. 48, 209 N.W.2d 902 (1973); *State Farm Mut. Auto Ins. Co. v. Village of Isle,* 265 Minn. 360, 122 N.W.2d 36 (1963); *Randall v. Village of Excelsior,* 258 Minn. 81, 103 N.W.2d 131 (1960); *Stabs v. City of Tower,* 229 Minn. 552, 40 N.W.2d 362 (1949). As was stated in *Randall, supra* :

" * * * The Civil Damage Act does not create a cause of action in favor of one injured by his own intoxication. Only an innocent third person who is injured as a result of the intoxication of another is entitled to its benefits. * * *

"It is immaterial whether the sale was made to plaintiff personally or to a third person. It is the fact of his voluntary intoxication which bars recovery * * *.

" * * * Had the legislature intended to give a person whose voluntary intoxication is the proximate cause of his injury a remedy unknown to the common law, it may be expected that it would have clearly done so." 258 Minn. 83, 103 N.W.2d 133.

Plaintiff does not challenge the correctness of the principle enunciated in *Sworski.* Instead, he argues that the *Sworski* rule is inapplicable to the instant case because plaintiff is a chronic alcoholic and thus does not drink voluntarily. As plaintiff points out, this court has recognized that some chronic alcoholics do not consume liquor by choice and therefore they partake involun-

1. It is questionable whether more than the certified question is properly before this court, but it is felt that the other issues presented are so closely related that they should be addressed to give needed guidance to further proceedings; therefore discretionary appeal is granted on these additional questions.

tarily. See, *State v. Fearon,* 283 Minn. 90, 166 N.W.2d 720 (1969). However, it does not follow that because of this "involuntary" consumption of liquor an alcoholic is entitled to recovery under § 340.95.

The use of the word "voluntary" intoxication in cases subsequent to *Sworski,* see, e. g., *Randall, supra,* referred to the consumption of alcohol which was not forced by a third party. Support for this is found in the *Sworski* decision itself, wherein the court phrased the critical inquiry in the following manner:

> "Is the quoted statute [the predecessor to § 340.95] one giving to the individual who partakes of intoxicating liquors unlawfully furnished by another in such a position that he may maintain an action for the harm *resulting to him* [emphasis original] from such intoxication, *absent, as here, any allegation of assault, force, deceit, or other like means used by the alleged wrongdoer to bring about his intoxication*? The quoted statute negatives any such notion." 204 Minn. 477, 283 N.W. 780 (emphasis added).

Thus, although an alcoholic's consumption of liquor may be involuntary in that he does not drink by choice, see, *State v. Fearon, supra,* his alcohol consumption is nonetheless voluntary within the meaning of *Sworski* and its progeny. Indeed, the purpose of § 340.95 is to compensate "innocent third persons" who are injured as a result of the illegal sale of liquor to an intoxicated person. See, *Randall, supra; Stabs, supra.* The thrust of *Sworski* and later decisions is that persons who, for whatever reason, are unable to exercise self-control in consuming alcoholic beverages are not among the class of persons protected by the Act. See, e. g., *Stabs, supra.* This reasoning applies even when the individual's intoxication is caused by alcoholism.

A contrary result would constitute a usurpation of legislative power. The legislature undoubtedly concurs in our long-standing construction of § 340.95, since it has not seen fit to reverse the *Sworski* decision by subsequent legislative action.[2] See, *Western Union Telegraph Co. v. Spaeth,* 232 Minn. 128, 44 N.W.2d 440 (1950). See, also, Minn.St. 645.17(4). Just as significant is the legislature's failure to provide an exception to the *Sworski* principle. The legislature has had numerous opportunities to modify the law to allow an alcoholic to recover damages, yet it has not seen fit to do so. In light of this legislative silence, we must presume the legislature intended that the *Sworski* rule be applied, without qualification, to an intoxicated individual suffering from alcoholism. This conclusion merely recognizes that the question involved in this case is a legislative one and thus a change in the law must be effected by a clear manifestation of legislative intent. Since we find no such expression of statutory intent, we must reject plaintiff's contention.

It should be noted that in support of his position plaintiff claims that granting a right to recovery under the Civil Damage Act to alcoholics would be appropriate because (1) it would serve as a deterrent for the illegal sales of alcohol by liquor vendors; (2) the penal, remedial and compensatory purposes of the Act would be promoted; and (3) the cost of compensation could best be borne by a liquor vendor's insurer. However, all these arguments apply equally as well to anyone who is injured because of intoxication, and are not persuasive in showing why an alcoholic should be able to recover and not all consumers of liquor in like circumstances.

Based on the foregoing, we conclude that alcoholics are "voluntary" consumers of liquor within the meaning of *Sworski* and subsequent cases. We therefore hold that plaintiff is precluded from recovery under Minn.St. 340.95.[3]

---

2. Our construction of § 340.95 has become a part of § 340.95 as if it were initially written into the statute. *Western Union Telegraph Co. v. Spaeth,* 232 Minn. 128, 132, 44 N.W.2d 440, 441 (1950).

3. We note that our holding is consistent with the decision reached in *Grasser v. Fleming,* 74 Mich.App. 338, 253 N.W.2d 757 (1977). In that case, the intoxicated party was an alcoholic.

■ 2. In many prior cases this court stated, *in dicta,* its agreement with the then generally recognized principle that no cause of action exists at common law against a vendor for an illegal sale of liquor. See, e. g., *Strand v. Village of Watson,* 245 Minn. 414, 72 N.W.2d 609 (1955); *Beck v. Groe,* 245 Minn. 28, 70 N.W.2d 886 (1955); *Sworski, supra.* This doctrine was grounded on the reasoning that the consumption of alcohol by the vendee, and not the sale of liquor by the vendor, was the proximate cause of any resulting injuries. See, *Trail v. Christian,* 298 Minn. 101, 213 N.W.2d 618 (1973); Note, The Common Law Liability of Minnesota Liquor Vendors for Injuries Arising from Negligent Sales, 49 Minn.L.Rev. 1154 (1965).

In *Trail, supra,* the court reassessed its position regarding the common-law liability of a liquor vendor. That case involved an illegal sale of 3.2 beer which resulted in damages to plaintiff, an innocent third party. Plaintiff admitted that the sale of 3.2 beer did not fall within the scope of the Civil Damage Act, but argued that she, nevertheless, was entitled to recovery based upon common-law negligence. Due to the inequities caused by the absence of a remedy under the Civil Damage Act for the sale of 3.2 beer, we held that the plaintiff could proceed under a claim of common-law negligence. The opinion was expressly limited to—

> " * * * sales of 3.2 beer to minors or those already intoxicated and the ensuing civil liability of the commercial vendor whose sale under these circumstances results in injuries to an innocent third party not a patron of the vendor." 298 Minn. 104, 213 N.W.2d 620.

In addition, the court stated:

> "We further note that it appears that by adopting the Civil Damage Act the legislature has preempted the subject of remedies available for wrongs arising from improper sales of statutorily defined intoxicating beverages." 298 Minn. 106, 213 N.W.2d 621.

Although no claim was made under the Michigan Dram Shop Act, the court acknowledged that "[p]laintiff could not state a cause of ac-

Thereafter, in *Fitzer v. Bloom,* 253 N.W.2d 395 (Minn.1977), we were faced with the issue of whether a common-law claim for negligence was proper where an action under the Civil Damage Act could be maintained. The *Fitzer* case involved a wrongful death action brought on behalf of the next-of-kin of William Fitzer, whose death was caused by a minor driver who had been drinking intoxicating liquor which had been furnished to her by a liquor vendor. The defendant driver sought to recover contribution from the vendor. However, since some of the damages recovered by plaintiff were not compensable under the Civil Damage Act, the defendant driver was forced to argue that she was entitled to a full share of contribution from the liquor vendor because of his common-law liability. The court rejected this contention by reasoning:

> "The principal issue raised by this argument is whether the common-law principles of *Trail* are to be extended into areas already covered by the Civil Damage Act or whether, by enacting the Civil Damage Act, the legislature has preempted the field.

> "The *Trail* case clearly applied only to the illegal sale of 3.2 beer, which is not within the scope of the Civil Damage Act. Since the legislature has provided a remedy for the illegal sale of intoxicating liquor in the Civil Damage Act, the legislature has preempted the field and has provided the exclusive remedy in the act. A common-law cause of action for negligence will only be allowed where the act does not apply." 253 N.W.2d 403.

In accordance with the language from the *Fitzer* decision, this court, in *Blamey v. Brown,* 270 N.W.2d 884 (Minn.1978), cert. denied, —— U.S. ——, 100 S.Ct. 1013, 62 L.Ed.2d 751 (1980), allowed a common-law claim for negligence to be pursued against a nonresident liquor vendor.. As we stated:

tion under the dramshop act because an intoxicated person has no right of action under the act." 74 Mich.App. 343, 253 N.W.2d 759.

"In the present case, the legislature obviously has not preempted the field since, as was previously resolved, our Act does not apply to a non-resident vendor. In light of our statements in *Fitzer, supra,* we hold that a common-law action for negligence lies in the case at hand since the Civil Damage Act is not applicable." 270 N.W.2d 890.

Plaintiff argues that, consistent with the above cases, if he is not entitled to recover under § 340.95, the Act is inapplicable and thus a common-law action for negligence will lie. Although this contention is superficially persuasive, it is an erroneous interpretation of the *Trail, Fitzer* and *Blamey* decisions. Rather, a proper construction of these cases discloses that the Civil Damage Act provides the exclusive remedy for the sale of intoxicating liquor by an in-state vendor, and thus a common-law claim of negligence is not maintainable in those situations. As discussed above, language from the *Trail* and *Fitzer* cases indicates that the Civil Damage Act preempts the field of remedies where a claim is based upon the improper sale of intoxicating liquors. *Trail, supra,* 298 Minn. 106, 213 N.W.2d 621; *Fitzer, supra,* 253 N.W.2d 403. The *Blamey* decision, in effect, merely clarifies that the scope of this preemption is limited to intoxicating liquor sold by resident vendors. Since plaintiff's claim arises out of a sale of an intoxicating liquor by a state vendor, the Civil Damage Act constitutes the exclusive remedy and thus no common-law negligence action is maintainable.

■ 3. Minn.St. 340.12, which provides for the filing of a bond by a liquor vendor, reads in pertinent part as follows:

"As to 'off sale' and 'on sale' dealers:

\* \* \* \* \* \*

"(d) That the licensee, will pay to the extent of the principal amount of such bond or policy, any damages for death or injury caused by or resulting from *the violation of any provisions of law relating thereto,* and in such cases recovery under this paragraph may be had from the surety on this bond or policy. The amount specified in such bond or policy is de-

clared to be a penalty, the amount recoverable to be measured by the actual damages; provided, however, that in no case shall such surety be liable for any amount in excess of the penal amount of the bond or policy.

"All such bonds or policies shall be for the benefit of the obligee and all persons suffering damages by reason of the breach of the conditions thereof." (Emphasis added.)

Plaintiff claims that defendant Corner Bar, the licensee, sold him intoxicating liquors when he was obviously intoxicated, thus violating Minn.St. 340.14, subd. 1a, a law pertaining to the liquor business. Accordingly, he argues that § 340.12 allows an action against Corner Bar's bonding company, Western Casualty and Surety Co., on the $3,000 surety bond filed pursuant to that statute.

Support for this contention is found in *Mayes v. Byers,* 214 Minn. 54, 7 N.W.2d 403 (1943), noted in 27 Minn.L.Rev. 538. In that case, the plaintiff brought an action based on § 340.12 and a similar local ordinance which required the licensee to file a bond. The plaintiff, while intoxicated, fell down a flight of inadequately lighted stairs within the bar. A local ordinance required that stairways "be well lighted at all times." Plaintiff argued that liability to the extent of the surety bond was proper because of the violation of a liquor control ordinance. In response, defendant asserted that plaintiff's contributory negligence in becoming intoxicated barred the claim. The court agreed with the plaintiff and rejected defendant's contention by reasoning:

"In view of the plain language of the statute and ordinance in question, it can hardly be denied that liability was intended on the basis of a penalty measured by the injuries suffered and limited in this respect to the amount of the bond. In legal contemplation, recovery is allowed not for a tortious wrong done to plaintiff, but as a means of enforcing the penalty imposed on the dealer. This being true, contributory negligence as a defense is

wholly inapplicable. To recognize plaintiff's fault as a defense would defeat the only means provided by statute for the enforcement of the penalty. Sustaining this position is *Pittsburgh, Ft. Wayne & Chicago Ry. Co. v. Methven,* 21 Ohio St. 586. See also 23 Am.Jur., Forfeitures and Penalties, p. 651, § 77.

"Reference is made to cases denying recovery under statutes such as Minn.St. 1941, § 340.95, Mason St.1927, § 3239, to a plaintiff who himself contributed to the intoxication of the person causing him injury. See *Morton v. Roth,* 189 Mich. 198, 155 N.W. 459; *Kearney v. Fitzgerald,* 43 Iowa 580. They are inapplicable. Section 340.95 does not manifest a legislative intent to protect the beneficiaries of the statute from their own failures or to impose a penal liability. See *Sworski v. Colman,* 204 Minn. 474, 283 N.W. 778." 214 Minn. 63, 7 N.W.2d 407.

The decision in *Turk v. Long Branch Saloon, Inc.,* 280 Minn. 438, 159 N.W.2d 903 (1968), however, appears to question the correctness of the *Mayes* holding. In *Turk,* the plaintiff brought suit under § 340.95 to recover for the damages he sustained by reason of the intoxication of another. The court found that since plaintiff had actively and knowingly participated in the illegal sale of the liquor, he was not entitled to the benefits of the Civil Damage Act. The court noted, though, that " * * * the question of whether the same consideration should control an action on a bond filed pursuant to § 340.12 can be left for decision until such a case is presented." 280 Minn. 443, 159 N.W.2d 907.

After carefully considering the question, we believe the *Mayes* decision should be followed. Its reasoning, as set out above, is sound. Section 340.12 by its own terms is a penal statute, and thus recovery under that section should not be precluded by plaintiff's culpability or inability to otherwise recover under § 340.95, or at common law. Thus, in accordance with *Mayes* and § 340.-12, plaintiff should be allowed to maintain an action against the vendor's surety, with liability being limited to $3,000, the amount of the bond.

Defendants' contention to the contrary is not persuasive. They argue that an action is not maintainable on the surety bond unless the licensee could be held liable under § 340.95. They reason that plaintiff does not have a claim under that statutory provision and thus cannot bring an action on the surety bond. In support of their position, defendants rely primarily on the decision in *Hartwig v. Loyal Order of Moose,* 253 Minn. 347, 91 N.W.2d 794 (1958). The *Hartwig* case involves claims by innocent third parties brought under § 340.95 for injuries allegedly caused by a vendor's illegal sale of liquor. The vendor's surety was also included as a named defendant. For reasons not material here, the court remanded the case for a new trial, but noted:

" * * * · So far as defendant Western Surety Company is concerned its position in the matter is governed by § 340.12 *in the event that the plaintiffs prevail against the defendants at another trial.* The maximum possible liability of Western Surety Company to both plaintiffs on any one of its bonds is limited to $3,000. Once this amount has been paid to any plaintiff by the defendant Western Surety Company as surety for any licensee, the full obligation under the bond issued to that licensee becomes exhausted. It is clear from the record here that the Western Surety Company was at the time of the occurrence of the accident here involved the surety on three separate liquor bonds issued by it to each of the other defendants. *These are separate bonds, constitute separate contracts, and liability attaches to the surety company on each bond only as each respective licensee is held liable to plaintiffs.*" 253 Minn. 366, 91 N.W.2d 808. (Emphasis added.)

Defendants argue that the above language shows that a surety is only liable on the bond if the licensee is liable under § 340.95. We do not agree that the *Hartwig* decision was making that point. The court was merely acknowledging that if the vendor was found liable under § 340.95 he would necessarily have violated a law pertaining to the liquor business, resulting in the sure-

ty's liability under § 340.12. Thus, we find little merit to defendants' argument.

In summary, we hold that plaintiff Everett Robinson cannot maintain an action under § 340.95, or at common law. He may, however, bring an action on the surety bond pursuant to § 340.12. We therefore reverse the trial court's ruling on the question certified to this court and remand the case for the entry of a new order and further proceedings consistent with the decision reached herein.[4]

Reversed and remanded.

TODD, J., took no part in the consideration or decision of this case.

---

4. We note that our decision does not preclude plaintiffs Irwin and Alma Robinson from recovering under § 340.95, since they are clearly intended beneficiaries within the meaning of the Act. See, *Ross v. Ross,* 294 Minn. 115, 200 N.W.2d 149 (1972); *Benes v. Campion,* 186 Minn. 578, 244 N.W. 72 (1932).